## WARDROP v. WARDROP

[No. 201, October Term, 1955.]

*Decided July 31, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Stanley B. Frosh,* with whom was *Charles E. Ford* on the brief, for appellant.

*Alger Y. Barbee* for appellee.

BRUNE, C. J., delivered the opinion of the Court.
The appellant wife, Judson H. Wardrop, brought a suit in

May, 1953, in the Circuit Court for Montgomery County against the appellee husband, William B. Wardrop, for a divorce *a mensa* on the grounds of cruelty and desertion, in which she also sought alimony *pendente lite*, suit money, including an allowance for a counsel fee, and permanent alimony. The prayers of the bill concluded with the customary prayer for "other and further relief." The husband filed an answer, and a few days later an order for alimony *pendente lite* at the rate of $263.11 a month and for an initial counsel fee was passed. In April, 1955, the husband filed a cross-bill in which he charged his wife with adultery committed in March, 1955, and he sought a divorce *a vinculo* on that ground. The wife filed her answer denying the charge in May, 1955. When the case came up for trial on October 27, 1955, counsel for the wife announced that she wished "to dismiss that portion of The Complaint which requests relief in the nature of a divorce and proceed on defense to the Bill of Complaint filed as a cross-bill, as well as to request relief in the nature of support and maintenance, counsel fees, suit monies and for an accounting." The trial then proceeded and rather extensive testimony was taken. On November 10th, 1955, the Court filed an opinion and decree dismissing both the original bill and the cross-bill. The wife appealed from that order. The husband noted a cross-appeal, but abandoned it after the decision by this Court of the case of *Courson v. Courson*, 208 Md. 171, 117 A. 2d 850.

A stipulation of counsel shows that the wife has been allowed $250 a month for support and maintenance pending this appeal and has been allowed $500 as a counsel fee in connection therewith, "with court costs being paid by the defendant and Cross Plaintiff upon submission of proper bills."

The Chancellor filed a thorough and comprehensive opinion in which he held that the husband had been guilty of desertion which would have entitled the wife to a divorce *a vinculo,* that the wife had been guilty of adultery, which would have entitled the husband to a divorce *a vinculo,* and that in such circumstances the doctrine of recrimination barred a divorce to either party. This opinion was in full accord with the decision of this Court in the *Courson Case,* which was filed just before, but not published until shortly after, Judge Anderson filed his

opinion in the instant case. It is unnecessary to review all of the testimony which was very carefully analysed and considered by Judge Anderson. It was ample to warrant his conclusions of fact as to desertion by the husband and adultery by the wife; and his findings of fact are not seriously challenged.

The appellant makes three contentions in this Court: (1) that the Chancellor should have granted her motion to dismiss the husband's cross-bill at the conclusion of the testimony adduced in support thereof; (2) that alimony should have been awarded to the wife; and (3) that an accounting should have been ordered in respect of the property owned by the parties as tenants by the entireties.

1. *Motion to Dismiss Cross-Bill.* We think it lies within the discretion of the Chancellor whether a motion to dismiss a bill at the conclusion of the complainant's case should be granted, and we find nothing in the instant case to suggest an abuse of that discretion. The appellant asserts that the appellee's own testimony showed that he was guilty of desertion of such character and duration as would have entitled the appellant to a divorce on that ground, and hence that no matter what charge he might be able to establish against the appellant, he could not be entitled to a divorce, because it would be barred by recrimination. Apart from any question of corroboration (which the appellant does not mention), an examination of the testimony of the appellee will show that he contended that his departure from the marital home was caused by his wife's conduct, and the Chancellor's opinion shows that his ultimate decision on the question of desertion was based in substantial part upon the testimony of a witness called by the appellant after the husband's case had been presented and her motion to dismiss had been denied.

Since the decision of the trial court held the doctrine of recrimination applicable, it seems clear that the postponement of the decision on that point until all of the testimony on both sides came in would have caused no prejudice to the appellant in the instant case, even if (contrary to our holding) the Chancellor's ruling had been erroneous. Indeed, it is not the effect of the ruling upon the instant case which is the underlying

basis of the appellant's complaint with regard to it. She claims that she was forced by the ruling to go ahead with her testimony and that this resulted in her producing testimony intended to show that the husband had been guilty of adultery on a date subsequent to that of the adultery with which she was charged and that the production of this testimony in this case may bar her from using it in a subsequent proceeding against her husband. Her theory, though not expressed in these words, seems to be this: that a matrimonial offense committed by one spouse which would warrant an absolute divorce may be set off against a matrimonial offense committed by the other spouse which would also warrant such a divorce, so that under the doctrine of recrimination neither party can obtain a divorce; but that if one party should commit another matrimonial offense, the then unoffending party should be entitled to a divorce based upon this new offense and should not be barred by his or her own prior misconduct. No authority is cited by the appellant in support of this theory, which seems to be a numerical variant of the doctrine of comparative rectitude in cases of recrimination. However, the doctrine of comparative rectitude is not recognized in this State, *Courson v. Courson, supra;* and the appellant's contention based upon it, or a variation of it, accordingly fails. If the rule should be changed, it is a matter for legislative, not judicial, consideration.

In view of what we have already said, the appellant's suggestion that the production of this testimony in this case may bar its use in any future case as a matter of *res adjudicata* does not require decision. We note that Judge Anderson discussed this testimony, but did not make any explicit decision on the question of the husband's alleged adultery. He may have considered the evidence insufficient to sustain the charge, or he may have thought it unnecessary to decide the question. In either event, his actual determination of fault on the husband's side is based only on desertion. We recently had occasion to review cases dealing with some questions of *res adjudicata* in divorce cases in *Besche v. Besche,* 209 Md. 442, 121 A. 2d 708. Questions of pleading where recrimination is a defense were considered in *Courson v. Courson, supra.*

*2. Refusal to Award Alimony.* It is too well settled in this State to require elaboration or much citation of authority that to support a decree for permanent alimony, the wife must have grounds which would warrant a divorce either *a mensa* or *a vinculo.* *Outlaw v. Outlaw,* 118 Md. 498, 84 A. 383; *Walker v. Walker,* 125 Md. 649, 94 A. 346; *Melson v. Melson,* 151 Md. 196, 134 A. 136; *Wendel v. Wendel,* 154 Md. 11, 139 A. 573; *Simmont v. Simmont,* 160 Md. 422, 153 A. 665; *Ayares v. Ayares,* 163 Md. 388, 163 A. 707; *Dougherty v. Dougherty,* 189 Md. 316, 55 A. 2d 787. In the case last cited Judge Markell, speaking for the Court, said: "We may assume that if this defense [recrimination] had prevailed, defendant [the wife] would not have been entitled to permanent alimony." (189 Md. 321, 55 A. 2d 789.) We think that assumption is correct and that it is applicable here.

*3. Claim for an Accounting.* The sufficiency of the appellant's bill of complaint and the prayers for relief therein contained, including the prayer for general relief, as the basis for her present effort to require an accounting of the rents and profits of real estate owned by the parties as tenants by the entireties is open to serious question. We shall, however, pass over this question, but are not to be understood as approving the sufficiency of the bill and prayers for this purpose.

The appellant relies heavily upon *Brown v. Brown,* 204 Md. 197, 103 A. 2d 856, as sustaining her right to an accounting. We may remark at the outset that the bill in that case specifically sought such an accounting, as well as a decree for separate maintenance. The bill in the present case does not do so. The *Brown Case* involves neither upkeep nor the payment of taxes, nor yet a partition or other disposition of the property, such as were held to be beyond the jurisdiction of a court of equity sitting as a divorce court in such cases as *Roberts v. Roberts,* 160 Md. 513, 154 A. 95; *Hull v. Hull,* 201 Md. 225, 93 A. 2d 536; and *Nicodemus v. Nicodemus,* 186 Md. 659, 669, 48 A. 2d 442, 446. In the scope of relief sought by an accounting the present case is like the *Brown Case.*

The appellee's answer to the original bill went in con-

siderable detail into the various real properties owned by the spouses, as well as into the matter of his professional income, which had not only been cut off entirely during the appellee's imprisonment for income tax evasion but had also doubtless been curtailed for some time following his release and return to his medical practice. Both parties were represented by counsel (not, however, by their present counsel) at the time when the amount of alimony *pendente lite* was fixed in the summer of 1953. We think that the appellee makes a sound contention that all of these matters must have been before the then Chancellor, Judge Woodward, when he fixed the amount of temporary alimony, and the odd amount specified indicates that it must have been based upon some rather careful calculations. The docket entries show no move by the appellant to bring about any change in the amount of alimony up to the time of trial, and at the trial a good deal of testimony was presented bearing upon the value of, and the income from, these properties. *Gunter v. Gunter*, 187 Md. 228, at 232-233, 49 A. 2d 454, at 457, was a suit for partition brought by a divorced husband. In the divorce suit an order had been passed which required the husband to pay alimony and to pay the taxes on property held as tenants by the entireties which was occupied by the wife. In commenting on that order, the validity of which was not involved in the partition case, this Court said: "In the case at bar we do not find from the terms of the divorce decree that the court intended to adjudicate the property rights of the parties, or to do more than accept the then occupancy of the property by the wife, free of rent, as one of the elements to consider in fixing the weekly payments for her support. Doubtless the court also took into account, in directing the husband to pay the taxes and ground rent upon the property without any right of contribution to the husband for the wife's share, the fact that this imposed an obligation which would otherwise have been reflected in a larger weekly amount." We think this is applicable here.

In *Brown v. Brown, supra* (204 Md. 197, 103 A. 2d 856), this Court, while recognizing the power of the trial court to appoint a receiver for property held by the husband and wife

as tenants by the entireties and to require an accounting of the rents and profits from such properties, affirmed a decree which refused to appoint a receiver or to require an accounting.

See also *Collier v. Collier,* 182 Md. 82, 32 A. 2d 469, which involved two cases between husband and wife. In one (No. 14) she sought a divorce *a mensa,* custody of minor children, alimony and the appointment of a receiver for property allegedly held by her husband and herself as partners and the sale of other property held by them as tenants by the entireties, and general relief. The wife's bill in that case (referred to in that opinion as the "divorce case") was dismissed, custody of the children was continued in the husband and he was ordered to pay costs. In the other case (No. 26) the wife sought (1) the appointment of a receiver for property held as tenants by the entireties, (2) the appointment of a receiver to operate the business, (3) an accounting of the business since a certain date, and (4) general relief. The Circuit Court denied prayers (1), (2) and (3) of that bill, "subject to further order of court", but under the prayer for general relief ordered the husband to account for one-half of the net profits of one property owned by the parties as tenants by the entireties and used in the husband's business (which was found not to be a partnership). This Court affirmed both orders, but in affirming the second, explicitly stated that it did so "inasmuch as the appellee had not appealed from the decree * * * in * * * No. 26."

In the opinion, after referring to *Masterman v. Masterman,* 129 Md. 167, 98 A. 537; *Brell v. Brell,* 143 Md. 443, 122 A. 635, *Annapolis Banking & Trust Co. v. Neilson,* 164 Md. 8, 164 A. 157, and *Whitelock v. Whitelock,* 156 Md. 115, 143 A. 712, the Court said (182 Md. 91, 32 A. 2d 473): "From these cases it may be deduced as a general rule that courts of equity will assume jurisdiction to protect the interest of one or the other spouse in property held as tenants by the entireties. Each case will depend upon its facts and upon its appeal to the conscience of the chancellor. These cases are not like the case of *Hall v. Hall,* 180 Md. 353, 24 A. 2d, page

415, for the question in that case was whether, upon a decree of absolute divorce, the court would restore to the innocent party full title to property held before the decree as tenants by the entireties, which was purchased by money of the innocent party. The court refused so to do and applied the general rule, 'that courts of equity in cases for divorce, have no power, unless expressly conferred by statute, to transfer the property of either spouse to the other, or otherwise to dispose of it.' "

These cases recognized the firmly established rule that the wife is entitled to one-half of the income from property held by the spouses as tenants by the entireties.

That rule is, of course, applicable as between the parties to this suit. We think, however, that in view of the informal understanding which seems to have existed between the parties with regard to the occupancy, income and expenses of the properties occupied by them respectively and the alimony allowed the wife during the pendency of the case in the Circuit Court and on this appeal, an accounting should not be required prior to the expiration of such payments. When they cease, each party will be entitled to one-half of the net income from the properties owned by them as tenants by the entireties. Such rights may, if necessary, then be enforced by proceedings for an accounting; or it may be that the parties will be able to reach an agreement which will obviate the need for further litigation.

Finding no error in the decree appealed from, we shall affirm it, the costs to be paid by the appellee.

*Decree affirmed; costs to be
paid by the appellee.*