# MARGUERITE O. EBERLY *v.* HARRY E. EBERLY

[No. 457, September Term, 1970.]

*Decided May 28, 1971.*

118

The cause was argued before ANDERSON, ORTH and THOMPSON, JJ.

*Daniel W. Moylan,* with whom were *Byron, Moylan & Urner* on the brief, for appellant.

*William J. Dwyer* for appellee.

PER CURIAM.

Harry and Marguerite Eberly separated on July 21, 1967. On December 12, 1967 Mrs. Eberly filed a bill in equity for a divorce *a mensa et thoro* on the grounds of her husband's desertion. He answered, denying his desertion and filing a cross-bill of complaint for a divorce from her on the grounds of her constructive desertion. The court dismissed the cross-bill and granted the wife a divorce *a mensa et thoro* on the ground of desertion.[1]

With respect to the question of alimony there was evidence adduced that Mr. Eberly was the owner of a motel in downtown Hagerstown which was encumbered with a mortgage which required payments of $1650 per month. He received a rental of $250 per month from a sublessee of a car-wash property which he and his wife leased as tenants by the entireties at a rental paid by him of $100 a month plus the taxes on the property. There had been a joint account with his wife in the amount of $9400 which had been changed to his name alone when they separated. He had made recent trips to Florida four or

---

1. *Eberly v. Eberly,* 253 Md. 132. The appeal was dismissed as taken prior to the filing of the decree. Rule 812 a and 835. But the Court said that had it decided the case on the merits it would have affirmed.

five times. His taxable income was as follows: 1964—
$7,277, 1965—$4,695, 1966—$10,140. Business at the mo-
tel was off some 40% due to the construction of an in-
terstate highway which by-passed the downtown area and
diverted much traffic from U. S. Route 40 on which Mr.
Eberly's motel was located. The court in its opinion spe-
cifically stated its consideration of the fact that after the
separation, but before the filing for the divorce, Mr. Eb-
erly had allowed his wife to remain in the family home
and paid the expenses on the house, had continued to give
her $100 per month, had bought her a new car and had
sent her to Florida for a vacation. The court set the ali-
mony to be paid Mrs. Eberly at $200 per month.

On July 15, 1968 Mrs. Eberly filed a petition in the
Circuit Court for Washington County for an increase in
her alimony payments. The end result of this petition
was the order of the court, dated July 10, 1969, increas-
ing the amount of alimony to be paid to $300 per month.
In making this decision the court had a wealth of infor-
mation before it. There were depositions of both Mr. and
Mrs. Eberly filed in the fall of 1968 and their oral tes-
timony taken in June 1969. In addition to the informa-
tion brought out in the previous alimony hearing concern-
ing the husband's ownership of the motel, on which
monthly mortgage payments were due, and the lease on
the car-wash property as a tenant by the entireties with
his wife, the court also received evidence as to Mr. Eb-
erly's ownership of an apartment-office property in Hag-
erstown from which he was receiving rentals ranging
from approximately $200 to $300 per month, depending
on whether the building was fully rented or not. The
court also received testimony that the husband had no
securities and no life insurance and that his total income
was derived from the motel, car-wash and apartment
property. That income, according to his tax return for
1968, was $9,287, on which he paid a tax of $1,527.00.

Mrs. Eberly's deposition and testimony showed that
she was receiving $200 a month from her husband, and
lived in the family home on which Mr. Eberly continued

to pay the taxes and insurance. However, she received no funds for the maintenance of the house, nor for utilities. These expenses, in addition to those for food, clothing, medical expenses and for her automobile amounted to over $500 per month. She admitted having taken $1000 from one of her husband's safe deposit boxes and stated that she had used this money for living expenses. She also testified that from the time of the taking of the deposition in September 1968 to the hearing in June, 1969, the amount of her savings had dwindled from $3000 to $400.

In rendering its opinion raising the amount of alimony to $300 per month, the court considered the needs of Mrs. Eberly, finding that the $200 alimony payment was insufficient to cover her personal expenses, expenses for maintenance and repair of the house and medical expenses. The court also considered the $9,200 net income of Mr. Eberly and noted that the $14,000 deduction for depreciation of the motel and apartment property taken on his income tax return meant that his actual spendable income was over $23,000 that year. Thus the court found that an increase in alimony payments to $300 per month was fully justified. Appellant states in her brief that there was an appeal noted from this decision which was later dismissed after an "informal meeting" of the chancellor and all counsel.

On January 9, 1970 Mrs. Eberly began the third stage in this protracted litigation between herself and her former husband. She filed two separate suits in equity, one seeking an accounting for one-half the net rental income from the leasehold interest in the car-wash property which she and Mr. Eberly owned as tenants by the entireties, and the other seeking an increase in the alimony allowance which had been set by the court on July 10, 1969 at $300 per month. The cases were tried together on March 24, 1970 and the decision was rendered on June 8, 1970. The court held that it had considered the income from the car-wash property in setting the amount of alimony previously and that, therefore, Mrs. Eberly was not

entitled to a separate accounting for half the income from this property over and beyond the alimony payments she was to receive. The court also noted that it had received information that Mrs. Eberly was employed and receiving a net income of $67.00 per week and accordingly reduced the alimony to $240 per month. Mrs. Eberly appealed.

In arriving at its decision the court had before it essentially the same information as it had previously and was faced with the same problem, that is, reaching some rational compromise between the husband's protestations that "I don't have no money to spend" and the wife's contentions that, since she "had helped make [the] wealth he has today", she was not only entitled to a greater share of her husband's income, but was greatly in need of it. The court heard testimony that Harry Eberly was no longer working since he had leased the motel for $2000 per month with a two year option to purchase at $275,-000. Thus his entire income was derived from the motel lease, the rental from the apartment-office building and from the car-wash. The court was informed that for the month of February, 1970, his income had amounted to $2610, while his expenses, including his $300 alimony payment, had amounted to $2600.63. Mrs. Eberly, on the other hand, claimed that her average expenses were $564 per month for such items as utilities, food, clothing, automobile and medical expenses, and testified that, while her mode of living had not changed, her expenses had risen since her divorce from her husband. The court found that the facts warranted neither a separate accounting for the income from Mrs. Eberly's half-interest as tenant by the entireties in the car-wash property nor an increase in the amount of alimony, but rather justified a decrease to $240 per month.

The appellant contends on appeal that the lower court erred in refusing to render an accounting for half the income of the leasehold property, claiming that she was entitled to summary judgment thereon, in refusing to increase the amount of support payments, and in failing to

require Mr. Eberly to pay a reasonable fee to the appellant's attorney for representing her in connection with the alimony proceedings.

Whether Mrs. Eberly is entitled to an accounting for one-half the income from the car-wash property depends on her rights as a tenant by the entirety in this property. Such rights have often been stated by the Court of Appeals and recently in *Howard v. Howard,* 245 Md. 182. There the Court quoted from *Columbian Carbon Co. v. Kight,* 207 Md. 203 where in the course of a historical review of tenancies by the entireties, the court said at 209:

> "It had accordingly been held by this Court since the enactment of those Acts [Married Women's Property Acts, Code, Art. 45] that the wife shares equally with the husband in the income from a tenancy by the entireties."

This statement, taken alone, would seem to indicate that Mrs. Eberly would be entitled to an accounting for one-half the income, for, while a divorce *a vinculo* would have converted the tenancy by the entireties into a tenancy in common with her husband, *McCally v. McCally,* 250 Md. 541, the divorce *a mensa* had no effect whatsoever on the title to the property held by them as tenants by the entireties, *Keen v. Keen,* 191 Md. 31. However, the general rule as to the wife's right to share equally in the income from property held as tenants by the entirety has been qualified by the Court of Appeals in particular circumstances. Thus in *Wardrop v. Wardrop,* 211 Md. 14, 21, the Court said that:

> "It may be deduced as a general rule that courts of equity will assume jurisdiction to protect the interest of one or the other spouse in property held as tenants by the entireties. Each case will depend upon its facts and upon its appeal to the conscience of the chancellor. Quoting *Collier v. Collier,* 182 Md. 82, 91."

In *Wardrop,* the Court stated the "firmly established rule" as to the wife's share of income from property held by the spouses as tenants by the entireties, yet, because of the understanding which existed between the parties as to the occupancy, income and expenses of the properties occupied by them, and the alimony allowed the wife pending the trial and the appeal, refused to grant the wife the accounting of her share of the income from the property held as tenants by the entireties which she desired. And in *Collier v. Collier,* 182 Md. 82, the Court stated that generally courts of equity will assume jurisdiction to protect the interest of one or the other spouse in property held as tenants by the entireties but observed that each case will depend upon its facts and upon its appeal to the conscience of the chancellor. It refused to assume jurisdiction of property purchased by the husband, title to which he held with the wife as tenants by the entireties where her own conduct was responsible for the separation. In *Brown v. Brown,* 204 Md. 197, a suit for separate maintenance, the court again stated that it is the law in this State that the wife shares equally with the husband in the income from property held by them as tenants by the entireties, at 211, but found that since the husband had disclosed to the court the income he received from properties he owned individually and as a tenant by the entireties and since he had made no charge for managing the properties or collecting the rents, an accounting of the rents which had already been considered by the court for the three year period of the litigation would be fruitless. However, the court did order an accounting from the date of the decree.

The case at hand is not on all fours with any of the above. Nevertheless, there are elements of those cases present in the instant case. As in the *Wardrop* case, there was an agreement here as to the residence in which Mrs. Eberly continued to reside, Mr. Eberly paying the taxes and insurance. As in *Wardrop,* where the court considered the alimony granted the wife pending trial and appeal as a basis for denying her an accounting, so the

court below ruled specifically that because he had considered the income from the property in setting the amount of alimony, the wife was not entitled to a separate accounting. As in *Brown,* the husband here collected the rents on the sub-lease and managed the property in question and paid the rental to the lessor as well as the taxes on the building. Not only did the court below state, but the record is clear that it had considered the income from the property in determining the amount of alimony. In each hearing for the setting of alimony, including the final one from which this appeal was taken, this item was always included in the statement of the sources of income of Mr. Eberly. Under the particular circumstances of this case, where the court below specifically considered the income from the leasehold property held as tenants by the entirety in setting the amount of alimony, where the husband collected the rent on the property and paid the rent, where the husband allowed his wife the exclusive use of the family house held by them as tenants by the entireties and paid the taxes thereon, in such circumstances we cannot say that the chancellor abused his discretion in denying a separate accounting for the rental income from the property held as tenants by the entirety.

As to the question of the summary judgment, appellant contends that the lower court committed error in failing to grant her motion for a summary judgment in the accounting suit, claiming that there was no genuine dispute as to any material fact and that she was entitled to a judgment as a matter of law. Maryland Rule 610 (d) (1), provides: "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." While the facts as to the separation and later divorce *a mensa* of the parties and as to the ownership of the leasehold interest in the car-wash property as tenants by the entirety were not in dispute, here, as

in *Dudley v. Montgomery Ward & Co.*, 255 Md. 247, 254, the appellant "was clearly not entitled to prevail as a matter of law," as is patent in the light of our finding no abuse of discretion in the lower court's denial of an accounting. Not being entitled to prevail as a matter of law, she was not entitled to a summary judgment and the motion was properly denied by the lower court.

Appellant's second contention concerns the amount of alimony awarded by the court below. While the court reduced the amount from $300 to $240 because of the fact of the wife's additional income from employment, the appellant contends that the amount should have been raised to $600.

The Court of Appeals summed up the law as to the amount of alimony in *Bowis v. Bowis*, 259 Md. 41, 43:

> "Various formulae have been recommended as guidelines for computing that portion of a husband's net income which should be awarded to the wife for alimony and as support and maintenance for children, such as those found in *The Section of Family Law of the American Bar Association,* 1964-65 Session, pgs. 76-86. Likewise, one may gather from reading *Schuman v. Schuman,* 252 Md. 13, 17, 248 A. 2d 876 (1969) ; *Hall v. Hall,* 238 Md. 191, 197, 208 A. 2d 593 (1965) ; and *Bradshaw v. Bradshaw,* 189 Md. 322, 326, 55 A. 2d 719 (1947), that this Court followed an approximate one-third rule of net income in awarding alimony where support for children was not involved. However, this Court has repeatedly emphasized the fact that there are no pat rules or statutory mandates to be followed in making awards for alimony and support and maintenance. Indeed, one is hard-pressed to find any area of law where the need is more compelling to tailor the remedy to the facts of each particular case. This was well stated by Judge McWilliams in *Burton v. Burton,* 253 Md. 233, 252 A. 2d 472 (1969) :

'The reports of our decisions abound in shop-worn expressions of the principles of law which are applicable here. What we said in *Waters v. Waters,* 191 Md. 436, 440-441 (1948), has been repeated and paraphrased in most of the cases which followed: [1] [See numerous Maryland decisions cited in footnote 1 pg. 236.]

'Although, in this case, the husband has been found guilty of adultery, the awarding of alimony is never a punitive measure. In determining an award of alimony and whether 'the wife's income is sufficient to care for her needs', the court shall consider the husband's wealth and earning capacity, the station in life of the parties, age, physical condition, the ability to work, the length of time the parties have lived together, the circumstances leading up to the divorce, and the fault which destroyed the home. *Timanus v. Timanus,* 178 Md. 640, 642, 643, 16 A. 2d 918; *Doughtery v. Doughtery,* 187 Md. 21, 48 A. 2d 451, 457; *Bradshaw v. Bradshaw,* 189 Md. 322, 326, 55 A. 2d 719, 721. Also, of course, to be taken into consideration are the assets and income of the wife. *Hood v. Hood, supra,* 138 Md. page 360, 113 A. 895, 15 A.L.R. 774. In making such an award the court can only use judicial discretion. Of course, there is no special statute or rule governing this discretion. It must be exercised to the necessary end of awarding justice and based upon reason and law.' "

It is clear that "the [alimony] award should not be disturbed unless the chancellor's discretion was arbitrarily used or his judgment was clearly wrong." *Blumenthal v. Blumenthal,* 258 Md. 534, 541.

It appears from the record, as summarized above, that the lower court had before it information concerning all of the factors listed above and took them into consideration in determining the award. Appellant argues most strenuously concerning the determination of the husband's wealth. She urges that the figures on Mr. Eberly's income tax returns are deceptive as they include a large deduction for depreciation on the real estate owned. This, appellant argues, is merely an accounting measure so that her husband's actual spendable income is much larger than the income tax return indicates. While this may be so, it is equally clear that the lower court specifically considered the depreciation figure in determining the amount of alimony in the second hearing and because of this raised the amount of alimony to $300. The reduction in the alimony to $240 followed from the court's consideration of the wife's income from employment. The court's determination, in its own words, was an attempt to arbitrate the competing claims of the husband and wife, between the husband who "claims he cannot afford to pay her anything and [the wife who] claims she needs $600 a month. Somewhere between these two distant claims the truth must lie." Thus the chancellor was obviously basing his determination on the controlling factors in an award of alimony, that is, the needs of the wife and the financial ability of the husband to pay. *Pet v. Pet,* 238 Md. 492. We cannot say that his discretion was arbitrarily used or his judgment clearly wrong. We note that the award is subject to change in the future if the "circumstances, needs, and pecuniary conditions of the parties change." *Brown v. Brown,* 204 Md. 197, 209.

Appellant's final contention concerns the failure of the lower court to require the husband to pay attorney's fees to the wife's attorney for representing her in connection with the alimony proceedings. The general rule in Maryland is that a husband is required to pay reasonable counsel fees for services rendered to his wife, both in the lower court and on appeal, when it appears that the wife's income is insufficient to care for her needs. The

amount of the award is within the discretion of the lower court and is not to be disturbed unless its discretion was exercised arbitrarily or its judgment was clearly wrong. *Danziger v. Danziger*, 208 Md. 469, 475. While at this particular point in the proceedings the lower court did not require the husband to pay his wife's counsel fees, it had done so earlier. While the first petition for an increase in alimony was pending, the court ordered the husband to pay $350 to his wife's attorney. The court at that time said that this was because the wife's only income was her $200 a month alimony. Thus the court considered that "the wife's income [was] insufficient to care for her needs." At this stage of the proceedings, however, the wife's alimony had been increased and she had a weekly net salary of $67.50. Obviously the court found that her financial condition had changed considerably and that this was the reason for decreasing her alimony award and disallowing her claim for attorney's fees. We cannot say that there was any abuse of discretion.

*Orders of 8 June 1970 affirmed; appellee to pay costs.*