## COLBURN *v.* COLBURN

[No. 453, September Term, 1970.]

*Decided June 2, 1971.*

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

334

*Natalie Zimmerman,* with whom was *Samuel Schenker* on the brief, for appellant.

*Theodore G. Bloom,* with whom were *Albert J. Goodman* and *Goodman, Bloom & Merrill* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

The record does not tell us why this once happy marriage has come unstuck but it must not be supposed that we are the least bit curious about it. The main question before us has to do with the wife's right to an accounting in respect of property held by the entireties. It suffices to know that the Colburns were married in 1956, that their only child is retarded, that the husband has built up a business from which he derives a comfortable income, and that the wife has some property of her own. In May of 1969 there was some unpleasantness about a purchase money mortgage in connection with the sale of some land. Much the same thing arose in October in respect of the sale of another property when she insisted not only on being named as a mortgagee but also on being made the direct recipient of one-half of the monthly payments of principal and interest. The husband failed to attend the closing and as a result the transaction aborted. On 7 October the wife's attorney wrote to the husband demanding that he turn over to her one-half of the avails from all of their jointly held properties. Since he seemed disinclined to do so she filed her bill of complaint, on 17 November, for an accounting and for the appointment of a receiver. On 14 January 1970 she left the home and within a short time thereafter she sued for a divorce. She began receiving alimony pendente lite on 1 March 1970.

He says, and she does not deny, that, until the separation, they continued to live together as husband and wife. They occupied the same house, they ate at the same table they looked after the needs of their child, he paid all of

the bills. He stopped giving her money after she filed the bill for an accounting. He continued to pay all of the bills, however.

On 10 June the chancellor filed a decree, the pertinent part of which is as follows:

"2. That Edward F. Mullen, C.P.A., be, and he is hereby appointed a special auditor of this court to take and state said accounting between the parties, of all sums collected, received, taken or appropriated by each of the parties from the following sources since October 7, 1969:

(a) Rents from all properties owned by the parties jointly, or as tenants by the entireties.

(b) Payments upon all mortgages owned by the parties as tenants by the entireties, with interest and principal to be stated separately.

(c) Monies on deposit in the joint names of the parties in all savings accounts and checking accounts.

(d) Jointly owned stocks, bonds and securities.

(e) Securities held by either party as trustee for the other."

The report of the special auditor was filed on 13 July. Counsel profess to understand it but we have had small success in that regard. However, the chancellor, on 7 August, after noting the absence of exceptions to the report, awarded judgment in favor of the wife against the husband for $5,907.55; he ordered the husband to deposit $1,380.56 in a joint account subject to withdrawal upon the joint order of himself and his wife or upon the order of the court; he ordered him to deposit in the same joint account "all future payments of principal and interest on three mortgages"; he ordered him to pay his wife one-half of the rents received from the "jointly owned rental properties." The chancellor "expressly retain[ed] jurisdiction to require such additional accounting and to pass such further orders as may be necessary

to do complete equity between the parties in these proceedings."

Responding to questions during argument, counsel told us that the dollar figures ($5,907.55 and $1,380.56) mentioned in the decree cannot be identified in the auditor's report because they had been negotiated by counsel for the wife and former counsel for the husband.

At 11:12 a.m. on 3 September the husband's present counsel noted an appeal. At 11:45 a.m. they entered their appearance in the case and at 3:16 p.m. (the same day) they filed a motion to revise the decree of 7 August. On 10 September the husband's former counsel struck his appearance. On 22 September the chancellor heard arguments of counsel on the motion to revise the decree. At 2:30 p.m. on 1 October the revised decree was filed. It restates the provisions of the decree of 7 August and, in addition, purports to give to the husband the right to deduct from the rents "taxes and insurance premiums which became due and payable after October 7, 1969 * * * [except on the residence] and after deducting therefrom all expenses incurred by agreement of the parties for repair, maintenance and improvement of any of their jointly owned properties." An hour and a quarter later a quite curious pleading was filed. It is entitled "Motion to Extend Time for Filing Revised for Appeal." Except for the fact that it is signed by the husband's new solicitors one might surmise, at first glance, that it was the wife's motion. The first paragraph states:

"That a motion to revise has been heard in the above matter and negotiations are in process to revise the decree from which the appeal was taken. This may render the appeal unnecessary."

The motion then goes on to ask for a 90 day extension of the time within which the record must be filed. The transcript of the record reached this Court on 25 January 1971. The husband did not dismiss his appeal from the decree of 7 August and there was no appeal from the revised decree which must, in the circumstances, be

treated as a nullity. *Tiller v. Elfenbein*, 205 Md. 14 (1954).

The rule that a wife is entitled to one-half of the income from property held by the entireties is firmly established. *Wardrop v. Wardrop*, 211 Md. 14 (1956), and the cases therein discussed. Nor is there any doubt that courts of equity will assume jurisdiction to protect the interest of one or the other spouse in property so held. *Collier v. Collier*, 182 Md. 82 (1943), and the cases therein cited and discussed. *See also Fernandez v. Fernandez*, 214 Md. 519 (1957), and 18 Md.L.Rev. 326 (1958). It is clear also that a court of equity may appoint a receiver for property held by the entireties and it may require an accounting of the rent and profits from such properties. *Smith v. Smith*, 211 Md. 366 (1956); *Wardrop, supra;* *Brown v. Brown*, 204 Md. 197 (1954). To the same effect *see Brown v. Brown*, 248 Md. 139, 146 (1967), and *Howard v. Howard*, 245 Md. 182 (1967), and the cases cited and discussed therein. One must be mindful, however, of the fact that in all of the cases mentioned or referred to the husband and the wife had become separated and were living apart. Our attention has not been directed to nor have we found any case in which a wife not separated from her husband has succeeded in obtaining an accounting and the appointment of a receiver in respect of properties held by the entireties. And since we are unaware of any case in which a wife so situated has been denied such relief the question presented is something of a novelty. In *Howard, supra,* we dealt with a related question but our holding there was restricted to the peculiar facts of the case; we said only that "the wife, not separated from the husband, is [not] entitled to receive half of the fair rental value of realty held by the entireties, a part of which is used exclusively by him in connection with his business and another part of which is used as their living quarters." *Id.* at 185.

In the case at bar there has been no allegation or proof of an intent to defraud, or that the monies arising from the properties were being used selfishly or improp-

erly, or that their use, whatever it might have been, did not inure to the joint benefit of the parties. The wife did not charge her husband with non-support; there is no claim that he has failed, in any respect, to provide for her welfare and the welfare of their retarded child. The record suggests that the properties were acquired with money earned by the husband. She still retains the separate property she acquired as the result of a prior marriage. The record suggests also that her only complaint was that he did not give her as much "house money" as she thought she ought to have.

Unlike the Pennsylvania court, *infra,* we think it is entirely possible that the facts and circumstances of some future case might be so unusual that it would be inequitable to deny the wife an accounting and the appointment of a receiver, even though she and her husband were not separated and living apart. *Cf. Whitelock v. Whitelock,* 156 Md. 115 (1928). But, as we have indicated, there is nothing unusual about the facts and circumstances in the instant case. The wife said she was content to let her husband handle all of their financial transactions and, indeed, so it appears. In this regard what was said in *Grover & Baker Sewing Machine Co. v. Radcliff,* 63 Md. 496, 500 (1885), and characterized as the settled rule in this state in *Brell v. Brell,* 143 Md. 443, 449 (1923), appears, a fortiori, to be apposite here. Chief Judge Alvey said for the Court, in *Grover*:

> "But if such money or other separate property of the wife has been received by the husband, with the knowledge and acquiescence of the wife, without such express promise at the time, no implied assumpsit, either legal or equitable, will arise to support a claim against the husband or his estate. The wife having the *jus disponendi* of her separate property, if she thinks proper to let her husband have it, or appropriate it, without any express promise or agreement at the time to account for or repay

her the amount so received or appropriated, she cannot afterwards set up a claim against the husband upon the footing of a creditor. In such case she is taken to have acquiesced in the appropriation of the fund for the common benefit of herself and husband, or for the benefit of the family." *Id.* at 449.

In *Lindenfelser v. Lindenfelser,* 396 Pa. 530, 153 A. 2d 901 (1959), the Supreme Court of Pennsylvania conceived the rule to be:

"Taking our conclusion in *Lindenfelser* [383 Pa. 424 (1956)] and *De Luca* [388 Pa. 167 (1957)] together, we believe the modern rule to be that *where husband and wife are separated but not divorced* and where one of them is excluded from the exercise or enjoyment of rights inherent in an estate held by the entireties, an accounting of the property so held may be ordered and the property or proceeds divided equally between them." (Emphasis added.) 153 A. 2d at 905.

Obversely, a Pennsylvania court has said:

"* * * The legal unity of husband and wife still remains, and the husband has the entire use and the wife has the entire use, for there are no moieties between husband and wife, where the real estate has been conveyed to and held by them as tenants by entireties. *McCurdy et al. v. Canning,* supra, 64 Pa. pages 40, 41; *Hoover v. Potter,* 42 Pa. Super. 21. While the marriage subsists it makes no difference which of the parties leases the property and obtains the rents; the leasing by either is for the benefit of them in that relation. *O'Malley v. O'Malley,* supra, 272 Pa. page 533, 116 A. 500; *Madden et al. v. Gosztonyi S. & T. Co.,* 331 Pa. 476, 488, 200 A. 624, 117 A.L.R. 904. Consequently, it be-

ing admitted that plaintiff and defendant are still wife and husband, under the circumstances set forth in the bill *neither could require an accounting by the other* of the rents from the real estate owned by them as tenants by entireties. See *Meyer's Estate (No. 2)*, 232 Pa. 95, 96, 81 A. 147; *O'Malley v. O'Malley*, supra, 272 Pa. pages 535, 536, 116 A. 500." *Wakefield v. Wakefield*, 25 A. 2d 841, 843 (Pa. Super. Ct. 1942) *app. den.* 26 May 1942. (Emphasis added.)

*Wakefield* has been cited with approval, *e.g.*, in *Stimson v. Stimson*, 346 Pa. 68, 29 A. 2d 679 (1943), and in *In re Kienle's Estate*, 139 N.Y.S.2d 150, 153 (Sur. Ct. 1955).

In *Wardrop, supra*, Chief Judge Brune, who wrote for the Court, indicated his approval of a notion expressed in *Collier, supra*, that "[e]ach case will depend upon its facts and upon its appeal to the conscience of the chancellor." *Id.* at 21. When we consider that, at the time the 7 August decree was passed, the parties had been divorced a mensa and that for some months the wife had been receiving alimony, both pendente lite and permanent, Judge Brune's further comment, in *Wardrop*, seems to be especially significant:

"The rule [that the wife is entitled to one-half of the income from property held by the entireties] is, of course, applicable as between the parties to this suit. We think, however, that in view of the informal understanding which seems to have existed between the parties with regard to the occupancy, income and expenses of the properties occupied by them respectively and the alimony allowed the wife during the pendency of the case in the Circuit Court and on this appeal, an accounting should not be required prior to the expiration of such payments. When they cease, each party will be entitled to one-half of the net income from the properties

owned by them as tenants by the entireties. Such rights may, if necessary, then be enforced by proceedings for an accounting; or it may be that the parties will be able to reach an agreement which will obviate the need for further litigation." *Id.* at 22.

The husband's present counsel argue, in this Court, that even if the wife was entitled to the accounting prayed in her bill of complaint, the special auditor's inclusion of certain bank accounts was improper and that since the judgment against him is based in large part on the special auditor's report it too is improper. Were this the only point in the case the husband might very well be foreclosed from advancing this argument because of his former counsel's acceptance of the negotiated figures earlier mentioned. However, since we shall remand the case his contention can be given the further consideration we think it deserves. We gather from the evidence that he maintained at least two bank accounts, in one of which he kept substantial balances for use as working capital and for performance bonds; in the other he kept smaller balances used mainly to pay household expenses. He authorized the wife, as a matter of convenience, to issue checks on these accounts but, he contends, the money on deposit belonged exclusively to him. In any case, the accounts were not held by the entireties, since either one could withdraw money from them. *Jones v. Hamilton,* 211 Md. 371, 380 (1956) ; *Brewer v. Bowersox,* 92 Md. 567 (1901).

We shall reverse the decree of 7 August 1970 because in our judgment the wife's right to an accounting, in the circumstances before us, could not have accrued until after she left the marital domicile on 14 January 1970. Nor can the husband, in these circumstances, be required to account for transactions which took place prior to 14 January 1970. It seems to us that, upon remand, it might be expedient to consider this case concurrently with the divorce case to the end that all financial aspects of the

differences between the parties can be reconsidered in light of the views expressed and suggested in this opinion, the alimony already established, and the additional considerations set forth in the revised decree.

*Decree reversed.*
*Case remanded for further proceedings conformable with the views expressed in this opinion.*
*Costs to be paid by the appellant.*