# COLBURN *v.* COLBURN

[No. 317, September Term, 1971.]

*Decided May 11, 1972.*

The cause was argued before HAMMOND, C. J., BARNES, FINAN, ▌ SINGLEY and SMITH, JJ.

*Natalie R. Zimmerman,* with whom was *Samuel Schenker* on the brief, for appellant.

*Theodore G. Bloom,* with whom were *Albert J. Goodman* and *Goodman, Bloom, Merrill & Lilly* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

This case returns to us for what will hopefully bring about a final disposition of the financial dispute between the appellant, James B. Colburn, Jr., and his ex-wife, the appellee, Marjorie B. S. Colburn. The opinion in the first appeal, *Colburn v. Colburn,* 262 Md. 333, 278 A. 2d 1 (1971), contains a complete discussion of the circumstances which culminated in this cause of action, and therefore the facts will be only briefly recounted.

While Mr. and Mrs. Colburn were still cohabiting, she became dissatisfied with her husband's management of their properties which they held as tenants by the en-

470

tireties, alleging that he collected the proceeds from them without informing her of their disposition. At this time Mrs. Colburn was under the care of an internist and a psychiatrist, a situation which she attributes to the fact that her husband had rejected her and refused to communicate with her in any way. Upon the advice of her psychiatrist, Mrs. Colburn consulted legal counsel for the purpose of protecting her interests in the jointly held properties, and not originally for the purpose of seeking a divorce.

On November 17, 1969, while still living with her husband, Mrs. Colburn filed a bill of complaint for an accounting and the appointment of a receiver in the Circuit Court for Anne Arundel County (Sachse, J.). On June 10, 1970, the chancellor filed a decree appointing Edward F. Mullen, C.P.A., as a special auditor of the court and directing him to state an account of all sums collected by each of the parties from: (1) rents collected from jointly held properties; (2) payments upon jointly held mortgages; (3) monies on deposit in the joint names of the parties in all savings and checking accounts; (4) jointly owned stocks, bonds and securities; and, (5) securities held by either party as trustee for the other. After the report of the special auditor was filed, the chancellor, noting the absence of exceptions to the report, on August 7, 1970, awarded a judgment of $5,907.55 in Mrs. Colburn's favor, and additionally, ordered Mr. Colburn: to deposit $1,380.56 in a joint account subject to the joint withdrawal order of the Colburns or the order of the court; to deposit in the joint account the future payments on three jointly held mortgages; and, to pay his wife one-half of the rental payments received from their jointly held properties.

On September 3, 1970, Mr. Colburn noted an appeal to the August 7 decree to this Court, whereupon we held:

"We shall reverse the decree of 7 August 1970 because in our judgment the wife's right to an accounting, in the circumstances before us, could

not have accrued until after she left the marital domicile on 14 January 1970. Nor can the husband, in these circumstances, be required to account for transactions which took place prior to 14 January 1970. * * *" 262 Md. at 341.

Accordingly, the case was remanded for further proceedings, from which the present appeal arises. Upon remand, counsel for the Colburns agreed to a stipulation, the effect of which was to:

> (a) acknowledge the fact that since January 14, 1970, Mrs. Colburn had received no part of the proceeds from the jointly held properties;
> (b) set forth the monies collected by Mr. Colburn after January 14, 1970, from rentals of jointly held properties and payments upon jointly held mortgages; and
> (c) set forth the amounts expended by Mr. Colburn after January 14, 1970, for taxes, insurance premiums and repairs on the jointly held properties.

The stipulation was submitted to the Circuit Court for Anne Arundel County, in equity (Sachse, J.), without additional evidence being presented. Memoranda of law were, however, submitted by both parties addressed to the specific issues of: (1) whether or not Mrs. Colburn was entitled to one-half of the rental payments made on one of the jointly owned properties which was being used by Mr. Colburn, a contractor, as a place of business for his corporation; (2) whether or not Mr. Colburn should be allowed a deduction for taxes and insurance premiums expended on the couple's home which he exclusively occupied and for which he paid no rental;[1] (3) whether or not Mr. Colburn should be allowed a deduction for repairs and improvements made to four jointly owned rental properties; and, (4) whether or

---

1. It should be noted that Mrs. Colburn did not cross-appeal the issue of any payment of taxes allowed as a deduction and which were due prior to January 14, 1970 and paid after that date.

not Mrs. Colburn was entitled to one-half of the monies placed in both parties' names in checking and savings accounts. After consideration of the memoranda, the chancellor passed a decree which, in effect, found in favor of Mrs. Colburn on the first three points discussed and in favor of Mr. Colburn on the fourth point, although he has appealed all four determinations. The decree awarded Mrs. Colburn the sum of $5,440.89, representing the amount found to be due for her share of the income from rents and interest payments on mortgages; ordered that the sum of $3,201.12, representing principal payments on mortgages, remain on deposit in a joint account subject to the joint withdrawal order of the Colburns or the order of the court; and, made provisions for future payments of proceeds from the jointly held properties to Mrs. Colburn. Each of the appellant's contentions will be separately considered.

## I

One of the Colburns' jointly owned properties is located in Edgewater, Maryland, and has been used exclusively for the operation of a contracting business, Colburn Contracting Company, Inc., which was, prior to January, 1971, owned by the appellant. The appellant admits that during the period for which he is to account to his ex-wife, he charged the corporation a monthly rental of $200.00 and that he has placed this money aside in his personal bank account. He contends, however, that the chancellor below erred in allowing Mrs. Colburn one-half of the rentals collected on this property, relying upon the rule of law quoted in *Hogan v. McMahon*, 115 Md. 195, 80 A. 695 (1911) that:

> "* * * 'one tenant in common cannot be held liable to his co-tenants for use and occupation of the common property, unless there has been an ouster of his co-tenants.' *Israel v. Israel*, 30 Md. 120. * * *." 115 Md. at 199.

Admittedly, there has been no ouster of possession in the instant case.

In *Collier v. Collier*, 182 Md. 82, 90, 32 A. 2d 469 (1943), reviewing the past decisions of this Court regarding a spouse's right to share equally with her husband in income produced by properties held as tenants by the entireties, Judge Grason, for the court remarked:

> "From these cases it may be deduced as a general rule that courts of equity will assume jurisdiction to protect the interest of one or the other spouse in property held as tenants by the entireties. Each case will depend upon its facts and upon its appeal to the conscience of the chancellor. * * *." 182 Md. at 91.

While it should be noted that in *Collier*, the chancellor did not allow the wife any income from the business property occupied and used by the husband, as a sole proprietor in his business, we believe the case at bar is distinguishable, on the facts, from *Collier*. In *Collier*, the court denied the wife's petition for divorce and literally told her to behave herself and go back home. In the instant case the chancellor indicated that in awarding alimony the court, eventually, would take into consideration the money which the wife may be receiving from jointly owned property. Again in *Wardrop v. Wardrop*, 211 Md. 14, 124 A. 2d 576 (1956), the Court had occasion to affirm the viability of the early Maryland decisions, stating:

> "These cases recognized the firmly established rule that the wife is entitled to one-half of the income from property held by the spouses as tenants by the entireties." 211 Md. at 22.

See also *Colburn v. Colburn, supra,* at 337; and *Brown v. Brown*, 204 Md. 197, 209-211, 103 A. 2d 856 (1954).

While we believe the rule of law quoted from *Hogan v. McMahon, supra,* is representative of the majority view on relationships between copartners, we fail to see its

applicability to the instant situation, where the property in question was leased to a third party, the corporate body of Colburn Contracting Company. Indeed, the appellant's contention loses most of its force upon the realization that in January, 1970, he retired from active participation in the business. In short, the appellant was collecting proceeds from the rental of this property to a third party, and it has been firmly established in this State that his wife, under the circumstances of this case, is entitled to share in those proceeds.

## II

The chancellor, in calculating the award to which Mrs. Colburn was entitled, properly offset taxes and insurance premiums expended by Mr. Colburn on the various properties, but did not allow a deduction for the taxes and insurance premiums paid by him on the home formerly occupied by the couple. The home is located in Wild Rose Shores, is held as tenants by the entireties, and since January 14, 1970, has been exclusively occupied by Mr. Colburn. Mrs. Colburn has not demanded, and Mr. Colburn has not offered, rental payments. Once more, the appellant places primary reliance for his position on *Hogan v. McMahon, supra.* In this instance, however, his reliance is well placed.

In *Hogan*, the plaintiff (appellant) filed a bill in equity seeking the sale of a parcel of ground which was held by the plaintiff and defendant as tenants in common. The defendant (appellee) filed an answer to the bill admitting its allegations, but denying that the plaintiff was entitled to relief for the reason that she had expended monies for improvements to the property, mortgage payments and taxes exceeding the amount claimed in the bill of complaint without any contribution from the plaintiff. The plaintiff and defendant lived on the property until the plaintiff left of his own accord. There was no evidence that the defendant had ousted the plaintiff from possession. Upon these facts, the Court held:

"* * * there can be no doubt that the appellee
is entitled to contribution by the appellant for
liens and encumbrances paid by her since they
became tenants in common. 17 *Am. and Eng.
Ency. of Law,* 685; 7 Ibid. 353, and, as shown
by the last cited authority, that statement in-
cludes mortgages, taxes and ground rent.

See also *Pino v. Clay,* 251 Md. 454, 456-457, 248 A. 2d
101 (1968) ; *Withers v. Douglas,* 206 Md. 141, 148, 110
A. 2d 513 (1955) ; *Schilback v. Schilback,* 171 Md. 405,
408, 189 A. 432 (1937) ; and *Myers v. Loan & Sav. Assn.,*
139 Md. 607, 612, 116 A. 453 (1922). *Schilback, supra,*
makes it clear that the rule of law applied in *Hogan* is
equally applicable to tenants by the entireties.

The statement is made in *Schilback* that:

"When one coparcener pays obligations such as
taxes, insurance and ordinary repairs, which
may be regarded as carrying charges, he does
not have recourse against the other for contri-
bution *without an agreement from the other to
pay. * * *.*" (Emphasis supplied) 171 Md. at
408.

However, we do not understand *Hogan,* or the prevail-
ing majority view, to require that a co-owner consent to
the payment of taxes or reasonable insurance premiums
before an obligation to contribute to the costs thereof
attaches. See 48 A.L.R. 586; 136 A.L.R. 1022; and 2
*Tiffany Real Property,* § 460 (3rd ed. 1939). As to the
propriety of deducting reasonable insurance premiums,
see 27 A.L.R. 255; 51 A.L.R. 2d 468; and 20 Am.Jur.2d,
*Cotenancy and Joint Ownership,* § 52; and cf. *Masterman
v. Masterman,* 129 Md. 167, 98 A. 537 (1916).

Mrs. Colburn contends that to allow a deduction for
taxes and insurance premiums on the home would be an
inequitable result, as she receives no benefit from the
property. We think, however, that this contention ignores
the fact that she possesses an interest in the property
which is protected from loss by the payment of the taxes

and insurance premiums. The fact that she currently is not enjoying the use of the property or receiving other value from it, is not due to her having been ousted, but rather her unwillingness thus far to pursue her rights in the property. We will again note that some of the more unusual aspects of this case may well have been avoided if the case had been considered concurrently with the couple's divorce proceedings. Unfortunately, this was not done.

### III

Mr. Colburn also contends that the chancellor erred in not allowing him a deduction for certain repairs made to one of the rental properties held as tenants by the entireties. The stipulation submitted to the court below describes the repairs in the following manner:

> "3. The defendant expended the following sums for repairs to the premises rented to Mr. and Mrs. Cochrane, without prior consultation with plaintiff:
>
> A. Repairs to roof, November, 1970—$95.00
> B. Repairs to well, November, 1970—$760.00
> C. Repairs to heating system, January, 1971 —$133.68
> D. Cleaning out septic tank, December, 1970 —$ 55.76."

It should be noted that although Mrs. Colburn consented to the leasing of the property in question, the lease was oral and contained no covenant on the part of the landlord to repair. Mrs. Colburn thus owed no contractural duty to make the repairs listed in the stipulation. Mrs. Colburn asserts that, "[t]he repair items * * * were not reasonable, necessary or proper;" however, we do not regard it necessary to reach this point, as the record reveals that repairs were admittedly made "without prior consultation with [the] plaintiff."

In *Woodcock v. Pope,* 154 Md. 135, 140 A. 76 (1928), the Court held:

"* * * the general rule is that one cotenant is entitled to contribution from another for necessary repairs and improvements when they were made with the assent of the other, or the repairs were necessary for the preservation of the building or other erection on the land, and were done by one cotenant *after request of and refusal by the other cotenant, Hogan v. McMahon,* 115 Md. 195, 201, 202; *Bonaparte v. Thayer,* 95 Md. 548, 587; *Williams v. Harlan,* 88 Md. 1; *Tiffany on Real Property* (2nd Ed.), § 200, p. 689; *Israel v. Israel,* 30 Md. 120, 128; *Venable's Real Property,* p. 102. * * *."

(Emphasis supplied.) 154 Md. at 147.

We affirm the ruling of *Woodcock v. Pope* for it is our belief that factors such as the expediency of making necessary repairs, the possible obligations of third parties to make repairs and, indeed, the necessity of the repairs themselves are proper objects of consideration for all of the joint owners. Mr. Colburn's action in not informing his wife of the performance of the repairs, deprived her of the opportunity to make these determinations prior to the money being expended; consequently, the refusal of the court to deduct these amounts from the proceeds of the properties was proper.

## IV

Finally, the appellant argues that the chancellor erred in not deducting certain amounts of money allegedly illegally withdrawn by Mrs. Colburn from bank accounts to which she did not contribute, and in not deducting money obtained by Mrs. Colburn from cashing a security for which she made no contribution. Futhermore, the appellant contends that Mrs. Colburn was not entitled to an accounting because no new bill of complaint was filed by her upon remand after the first appeal and because an award of alimony was pending in the divorce action. Our reading of the record, however, fails to establish that

these points were properly raised before the chancellor. The memoranda of law submitted to the court upon remand were specifically addressed to the issues of whether or not Mrs. Colburn was entitled to share in the bank accounts and securities. The chancellor determined that she should not share, but no request was made to offset sums of money wrongfully taken from these sources. Accordingly, we will not consider these issues on appeal, Maryland Rule 885, and we affirm the decree of the chancellor as revised by the allowance to the appellant of the sum of $741.88 representing one-half of the taxes and insurance premiums paid on the Wild Rose Shores property from January 14, 1970.

> *Decree modified and as modified, affirmed; appellant to pay ¾ of costs; appellee to pay ¼ costs.*