JOHANNA MARTOS, Plaintiff, *v.* JOSEPH MARTOS, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, November 3, 1954.

*George N. Berman* for plaintiff.

*Joseph Martos,* defendant in person.

CHIMERA, J.   Plaintiff sues her husband for half the gross rentals of property standing in the name of both of them as tenants by the entirety.

From the date that the premises were first rented (June 1, 1952) to the date of the commencement of this suit the sum of $1,600 was collected and retained by the husband.  Since then and up to the date of this hearing (Sept. 20, 1954) an additional sum of $1,200 has been collected and retained by him.

In the interest of avoiding multiplicity of suits and in keeping with the spirit of permissive modern practice, plaintiff has been allowed by this court to amend her pleadings so as to increase her claim to $1,400, representing one half of the gross rentals collected to date.

The case was tried once before another Trial Judge resulting in a dismissal of the complaint. On appeal to the Appellate Term of the Supreme Court, that decision was reversed and a new trial ordered " confined to the ascertainment of deductible expenses for the purpose of granting plaintiff judgment in the amount of one-half the net income " (*Martos* v. *Martos,* Appellate Term, 1st Dept., June 17, 1954, HAMMER, HOFSTADTER, and EDER, JJ.).

By this ruling the appellate court has clearly distinguished between a situation involving the proceeds of a sale of real property held by the entirety and an action for the recovery of income from such property brought by a spouse during the existence of the marriage. I think, properly so.

The law is settled that upon a sale or other disposition of a parcel of property, a wife who is a tenant by the entirety is entitled to half of the proceeds regardless of her contribution or lack of contribution toward the original purchase payment, subsequent mortgage and interest payments and improvements made to the " marital dwelling house " during the existence of the marriage. (*Hosford* v. *Hosford,* 273 App. Div. 659, and cases therein cited.)

Equally well settled is the principle that where the marriage is severed by a divorce decree, the parties become tenants in common and such expenditures are treated as they normally would be in a tenancy in common, from the date of the dissolution of the marriage. (*Hosford* v. *Hosford, supra,* and cases therein cited.)

From all I can deduce, plaintiff's position on the original trial and on appeal was, that she was entitled to a half share of the gross rentals, all disbursements made by her husband in connection with the property being presumed a gift to her.

On this retrial plaintiff's position is slightly changed. It is now her contention, First — that deductions can only be made for the calendar period of the rent collections, and Secondly — that mortgage amortizations and interest are not expenses and may not be deducted in computing net income here.

On all " battle fronts " she holds fast to the fact that her marriage is still in existence and relies mainly on the doctrine of the *Hosford* case (*supra*), particularly on the following language appearing on page 661 of that authority: " The fact that the husband provided the purchase price in the first instance does not alter that situation. When title was taken in the names of the husband and wife so as to create a tenancy by the entirety the law will presume a gift upon the husband's part based upon mutual love and affection (*Shapiro* v. *Shapiro,* 208 App. Div. 325, *supra; Yax* v. *Yax,* 125 Misc. 851, affd. 217 App. Div. 714, *supra*). Moneys expended during the existence of the marriage by the husband for mortgage principal, and interest, and for improvements on the marital dwelling house, fall in the same category."

By the plaintiff's own testimony she left the marital household at the end of March, 1950. One thing is certain — whatever was expended by the husband defendant in connection with the subject property prior to April 1, 1950, regardless of the nature and purpose of the expenditure is in law " presumed a gift upon the husband's part based upon mutual love and affection." (*Hosford* v. *Hosford, supra,* and cases therein cited.)

Under the circumstances in this case, what are the presumptions in favor of plaintiff wife and what expenditures if any must be credited to the husband before a proper figure of net income may be fixed for the wife? These are the questions this court is called upon to answer.

The history of this marriage discloses that the premises in question ceased to be a " marital dwelling house " at the end of March, 1950. A separation suit (*Martos* v. *Martos,* N. Y. L. J., Jan. 25, 1951, p. 318, col. 4) commenced by plaintiff, resulted in a dismissal of the complaint, the court there having found that plaintiff had shown no legal right to an adjudication of separation and separate maintenance. By her own testimony in the separation action, plaintiff ceased to have any love and affection for defendant even prior to the date of her departure from defendant's bed and board. Although begged to return, she then refused and still refuses to discharge her obligation under the marriage contract.

If plaintiff's position is grounded in the legal obligation of a husband to support his wife, the facts here must surely invoke the doctrine of the celebrated case of *Mirizio* v. *Mirizio* (242 N. Y. 74), which although not in point as to facts, is nevertheless " bible " on the subject of support for a wife who leaves the " marital dwelling house."

Logically then, though he may be in duty bound to love and cherish her, in the absence of her reciprocal love and in the face of her refusal to return to the " marital dwelling house ", he owes her no duty of support unless she shows that her departure was justified in law. In this matter, that particular issue was decided for us elsewhere and is *res judicata.*

It follows also, that if the consideration of " mutual " love and affection is found lacking in fact and the house in question ceases in fact to be a " marital dwelling house ", the law will not presume a gift upon the husband's part (cornerstone of the *Hosford* case, *supra*).

In any event, *Hosford* (*supra*) is not the law of the case at bar. Neither *Hosford* nor the authorities cited therein con-

cerned themselves with income from property held by the entirety. Those were cases which were concerned only with the proceeds of a sale of properties so held and the question of income was not at issue in any of them.

The great weight of authority establishes that the *only* difference between a tenancy by the entirety and a tenancy in common as the law now stands is the right of the survivor to the possession of the entire estate. It is now settled law in this and in other jurisdictions that except for that difference, the spouses are tenants in common of the use during the period of their joint lives with a contingent remainder in fee dependent upon survivorship. (*Hiles* v. *Fisher,* 144 N. Y. 306; *Matter of Goodrich* v. *Village of Otego,* 216 N. Y. 112; *Matter of Holcomb,* 97 Misc. 241; *Gray* v. *State of New York,* 116 Misc. 760.)

The doctrine of the *Hosford* case (*supra*) is not in conflict with the conclusion that a spouse co-owner of a property held by the entirety is entitled to no more than an ordinary tenant in common would be entitled to when it comes to the question of rents and profits.

Whatever plaintiff's rights may be so long as she remains a wife in every sense of the word — if she elects to be a wife in name only, she must be relegated to the rights and obligations of an ordinary tenant in common.

As such she may recover only the *just* proportion of income from the property (Real Property Law, § 532).

If the word " just " means anything, it certainly means what is fair and equitable. To allow a spouse to recover one half of the rentals in a situation like this, without charging her with one half of the necessary expenditures, would be grossly unfair and inequitable.

Mortgage amortizations may be classified as capital expenditures and may not be deductible for some purposes, for example: — in computing net income on income tax returns or determining profits from an ordinary business venture. But no serious mind will deny them the character of deductible expenditures where a calculation of net *distributable* income from property is concerned. And as for interest payments — even in tax matters and ordinary business ventures, all debt service charges are legitimate deductible expenditures before profits may be ascertained.

In reversing the original trial court, the Appellate Term did not specify what constituted " deductible expenses ". No legal authority has been furnished by plaintiff in her brief to substantiate her latest contentions that amortizations and interest are

not deductible expenses, or that expenses must date from the date of collections, under the circumstances in this case.

Concluding as I do, that the premises ceased to be a " marital dwelling house "; that love and affection was no longer " mutual ", and that defendant owed plaintiff no duty of support after March 31, 1950, I am constrained to find and do decide that defendant is entitled to deduct from the total of all rents collected, all necessary disbursements made by him since that date in connection with the subject premises, and that judgment should be given plaintiff for a sum equal to one half the resulting difference.

At the trial before me defendant was not represented by counsel. Over the strenuous objections of plaintiff's attorney, I allowed testimony to be taken of expenditures dating earlier than April 1, 1950. All such testimony is now stricken from the record and will not be considered. Defendant's testimony of expenditures subsequent to April 1, 1950, wholly unsupported by cancelled checks or other receipted vouchers is disregarded without prejudice to defendant to assert such proof, and proof also of other expenditures made by him and not raised at this time, by way of defense, offset or counterclaim in any suit brought by plaintiff in the future, addressed to any calendar period subsequent to September 20, 1954.

The items allowed as necessary deductible expenses are identified on the schedule attached hereto and made a part of this opinion.* If, because of confusion attendant on the trial, some of these items were not marked in evidence, they are now so marked with exception to plaintiff. The period considered begins with April 1, 1950, and ends September 20, 1954 (the date of this trial).

Also over the strenuous objection of counsel for plaintiff, testimony of the matrimonial history and record in the separation suit above mentioned was allowed and the entire record in the Supreme Court is marked in evidence in addition to the transcript of minutes and the transcript of the testimony of Dr. Donald V. Cooney, since delivered into my hands by plaintiff's counsel.

After deducting the sum of $2,334.97, found as necessary expenditures (see schedule attached), from the sum of $2,800 collected up to the date of trial herein, there remains a balance of $465.03 which, when divided, entitles plaintiff to judgment in the sum of $232.52.

* P. 866, *post.*

SCHEDULE

*AMORTIZATIONS, INTEREST AND OWNERS' ESCROW ACCOUNT*

36 cancelled checks to the order of College Point Savings
Bank dated from April 29, 1950, to August 31, 1953.

| | | | | |
|---|---|---|---|---|
| 18 | checks for | $47.30 | each ..................... | $851.40 |
| 1 | " " | 51.22 | ..................... | 51.22 |
| 10 | " . " | 48.30 | " ..................... | 483.00 |
| 6 | " " | 49.30 | " ..................... | 295.80 |
| 1 | " " | 3.08 | ..................... | 3.08 |

                                 $1684.50

*WATER, SEWER CHARGES AND ASSESSMENTS*

4 Receipted bills with cancelled checks
1 Receipted bill without cancelled check

| | |
|---|---|
| 1950 (after 4/1/50) ......................... | $15.00 |
| 1951 ........................................ | 20.00 |
| 1951 (Assessment) ........................... | 80.82 |
| 1952 ........................................ | 20.00 |
| 1953 ........................................ | 20.00 |

                               155.82

*REPAIRS* After 4/1/50

By receipted bills without cancelled checks

| | |
|---|---|
| Heating system ........................... | $ 4.00 |
| Refrigerator ............................. | 32.00 |
| Electrical ............................... | 9.00 |
| Furnace .................................. | 133.00 |
| " .................................. | 46.00 |

                               224.00

*PAINTING* by receipted bill and cancelled check .............   180.00

*INSURANCE* 1 receipted bill and cancelled check and 1 receipted
bill without ................................... $17.50
                      46.75

                              64.25

*MISC.* all cancelled checks........................... $9.00
                      4.75
                      1.10
                      2.75
                      8.80

                              26.40

Total deductible expenses ................................. $2334.97
  Total Gross Rents ............................ $2800.00
  Total Deductible Expenses ..................... 2334.97

    Net return .......................... $ 465.03
    Plaintiff's half share .............................    $232.52