PAUL DORF, PLAINTIFF-APPELLANT, v. TUSCARORA PIPE LINE COMPANY, LIMITED, ETC., DEFENDANT, AND HILDA H. DORF, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 12, 1957—Decided December 13, 1957.

28

Before Judges GOLDMANN, FREUND and CONFORD.

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. Plaintiff appeals from a judgment of the Superior Court, Law Division, directing the clerk of the court to disburse in equal shares the proceeds of a judgment recovered for damage to certain realty owned by him and his wife.

The parties were married in 1942 and for several years lived in South Bound Brook, N. J., in premises held by them as tenants by the entirety. In October 1952 an oil leak developed in an underground pipe line near their property, owned by Tuscarora Pipe Line Company, Limited. The oil seeped into the cellar of the home, causing extensive damage to the house as well as to plaintiff's personal property. The Dorfs were compelled to move and they took up residence in Metuchen, N. J.

Defendant left her husband on June 16, 1953 and about a year later brought an action in the Chancery Division for divorce on the ground of extreme cruelty. Our examination of the pleadings and transcript in that case reveals that defendant suddenly left her husband and their son and went to live with her mother in New York, after plaintiff discovered that she had taken $25,000 in cash belonging to him. He counterclaimed for this money, as well as for certain other valuable property which he claims she had taken. The divorce action eventually ended in a judgment dismissing the complaint with prejudice, granting custody of the son of the marriage to defendant, and reserving all other issues for further hearing and determination.

In the meantime, and on March 27, 1954, plaintiff instituted an action against Tuscarora for damages to the South Bound Brook premises and his personal property. He later added his wife as a party defendant. This litigation resulted in a settlement and judgment for $5,250 in favor of plaintiff and his wife. It was stipulated that $2,500 of this amount was to be paid to plaintiff for the damage to his personal property, the $2,750 balance being deposited in court to await the determination of the respective parties' interest therein.

Plaintiff applied for distribution of the fund, claiming that the $2,750 should be used to repair the damage caused by Tuscarora and also to pay taxes. Defendant contended that the money should be equally divided. At the hearing which followed plaintiff testified that in the years 1953 through 1956, while the parties were separated and the South Bound Brook property unoccupied, he paid out $2,479.24 for taxes, insurance and repair and maintenance charges. The property has remained vacant; it is in bad disrepair and uninhabitable. Plaintiff sought to introduce in evidence a contractor's estimate of repairs necessary to restore the house to its former condition, amounting to some $3,000, but the court sustained an objection to its admission.

The trial court determined that the $2,750 recovered in the Tuscarora action for damages to the real estate was per-

sonalty; that there could be no estate by the entirety in that fund; that plaintiff was not entitled to reimbursement for the taxes, insurance and other monies expended; and that in the absence of probative evidence as to the cost of repairing the house, no consideration could be given to plaintiff's claim that he be allowed to withhold and expend all of the fund for its restoration. The judgment directing payment of the $2,750 to the parties in equal shares was thereupon entered, and this appeal followed.

Plaintiff contends that the money recovered from Tuscarora remains realty; it is held by the entireties and is subject to survivorship. The law of New Jersey is to the contrary.

A tenancy by the entirety in realty is an estate held by husband and wife by virtue of title acquired by them jointly after marriage. The tenancy is the creature of common law, created by legal fiction and based wholly on the common law doctrine that husband and wife are one. It is a peculiar and anomalous estate, *sui generis* in character. Estates by the entirety have no moieties; each owner holds the entirety and each receives *per tout et non per my*. Although divorce will convert such an estate into a tenancy in common, *Sbarbaro v. Sbarbaro*, 88 *N. J. Eq.* 101 (*Ch.* 1917); 4 *Powell on Real Property* (1954), § 624, *p.* 669, a mere separation, whether voluntary or judicial, will neither destroy the estate nor change its essential characteristics. Upon the death of one of the spouses the entire estate and interest belongs to the other, not by virtue of survivorship but by reason of the title that vested under the original limitation. 4 *Thompson on Real Property* (*perm. ed.* 1940), § 1803, *p.* 329 *et seq.; 2 American Law of Property* (1952), § 6.6(a) and (b), *pp.* 23, 27. Tenancies by the entireties do not exist in fully half of the United States. Some states have reached this result by rejecting the type of ownership as repugnant to our institutions and the American sense of justice to the heirs; in other states the result has been said to be the necessary consequence of the destruction of the spousal unity, attributed to laws removing the disabilities

of married women; and occasionally the result has been attributed to a statute which enumerated permitted types of concurrent ownership, but failed to mention tenancies by the entirety. However, such tenancies are still recognized in 21 states, including New Jersey. See 4 *Powell on Real Property* (1954), § 621, *p.* 654. Nonetheless, as Powell observes (§ 623, *pp.* 667–668), there has been a transition away from the traditional form of the tenancy by the entirety —a movement that has gone furthest in New Jersey, New York, Oregon and Kansas, where the tenancy closely resembles a tenancy in common with an indestructible right of survivorship. In New Jersey, for example, each spouse is entitled to half the net income. *Zanzonico v. Zanzonico,* 24 *N. J. Misc.* 153, 46 *A. 2d* 565 (*Cir. Ct.* 1946). The spouse's present beneficial interest can be reached for the satisfaction of his separate creditors. *Craig v. Craig,* 25 *N. J. Super.* 226, 767 (*Ch. Div.* 1953). A purchaser of one tenant's interest on execution sale becomes a tenant in common with the other spouse. See *Zubler v. Porter,* 98 *N. J. L.* 444 (*E. & A.* 1923). If the non-debtor spouse survives, the survivor takes free from the claims of the deceased spouse's creditors, *Zanzonico v. Zanzonico,* above. *Quaere,* if the debtor spouse survives, does the purchaser of his interest on execution sale get complete ownership? And prior to a conveyance, voluntary or involuntary, each tenant is entitled to possession, along with his or her spouse, *Evans v. Martin,* 26 *N. J. Misc.* 65, 56 *A. 2d* 416 (*Cir. Ct.* 1948); can protect his interest against a wrongdoing outsider, and is protected against waste by his spouse. For a criticism of the estate by the entirety, especially in the light of married women's property acts, see 2 *American Law of Property* (1952), § 6.6(*d*), *pp.* 31–32.

Although a tenancy by the entirety in real estate is generally held not to be destroyed by legislation which secures to the wife enjoyment of her property (4 *Thompson on Real Property* (*perm. ed.* 1940), § 1815, *p.* 348; *Buttlar v. Rosenblath,* 42 *N. J. Eq.* 651 (*E. & A.* 1887) (where

the effect to be given the Married Woman's Act of 1852, now *R. S.* 37:2–12, was considered); *Zanzonico v. Zanzonico*, above, 24 *N. J. Misc.*, at *page* 157), in New Jersey the Married Woman's Act has been held to create a tenancy in common in the avails of real estate and in personalty. *Aubry v. Schneider*, 69 *N. J. Eq.* 629 (*Ch.* 1905), affirmed 70 *N. J. Eq.* 809 (*E. & A.* 1906). New Jersey does not recognize a tenancy by the entirety in personal property. *Aubry v. Schneider*, above; *Central Trust Co. v. Street*, 95 *N. J. Eq.* 278 (*E. & A.* 1923); *Brown v. Havens*, 17 *N. J. Super.* 235 (*Ch. Div.* 1952); *Butterer v. Santoro*, 24 *N. J. Super.* 361 (*Ch. Div.* 1953); *R. S.* 37:2–12; *cf.* 2 *American Law of Property* (1952), § 6.6(c), p. 30.

 We do not deal here with monies paid on condemnation of real property held by the entireties, or surplus monies arising from the foreclosure of a mortgage made by a husband and wife upon land held by them as tenants by the entirety, or the proceeds of insurance paid upon property so held which has been destroyed. In those cases, the property, as such, no longer exists, and the proceeds stand in its place. It has therefore been held that there is an involuntary conversion of the property and that the monies are held by the entirety, with right of survivorship continuing. 4 *Thompson on Real Property* (1940), §§ 1820, 1821, *p.* 356; 19 *Am. Jur., Equitable Conversion*, §§ 19, 21, 24, *pp.* 18, 19. Such, obviously, is not the situation here. Accordingly, we hold that the $2,750 representing the damage suffered by the South Bound Brook property is not held by the entirety, but is personalty belonging to plaintiff and his wife as tenants in common.

 Is plaintiff entitled to reimbursement for monies expended in payment of taxes, insurance and necessary maintenance and repairs on the former home of the parties? We return to the further consideration of the nature of an estate by the entirety. It is familiar law that a tenancy by the entirety is, as between husband and wife, one having the characteristics of a tenancy in common for their joint lives, with remainder to the survivor in fee. *Ross v. Ross*, 35

*N. J. Super.* 242, 246 (*Ch. Div.* 1955). As was said in *Nobile v. Bartletta,* 109 *N. J. Eq.* 119, 122 (*E. & A.* 1931), "the wife holds in her possession during their joint lives one-half of the estate in common with her husband, and, as between themselves, the respective rights of the parties are those of tenants in common, * * *." Where a co-tenant pays more than his share of the taxes, insurance and other necessary carrying charges, he may in equity ordinarily compel the others to contribute their share. *Zanzonico v. Zanzonico,* 124 *N. J. Eq.* 477, 479–480 (*Ch.* 1938) (tenants by the entirety); *Woolston v. Pullen,* 88 *N. J. Eq.* 35 (*Ch.* 1917) (partition). The present case is not one of a co-tenant who has been in sole possession of the property, where the value of his use and enjoyment equals or exceeds the payments he has made. In such a situation no action for contribution will lie against the others. Nor do we have a case of a co-tenant who has occupied the premises as an adverse possessor; there no contribution will be allowed him, since such value will be conclusively presumed to equal the payments so made by him. *Mastbaum v. Mastbaum,* 126 *N. J. Eq.* 366, 373 (*Ch.* 1939); *Finley v. Keene,* 136 *N. J. Eq.* 347, 355–356 (*Ch.* 1945).

The enforcement of the right to contribution is either by an action in equity or in the corresponding action at law in *quasi*-contract; or by an accounting under an act corresponding to the statute of Anne (4 *Anne, c.* 16, § 27 (1704)) for rents and profits, in which the tenant, in accounting for such rents and profits received by him without wrong, is credited with expenditures made by him in the payment of taxes, interest and other carrying charges; or it may be by a partition action in which all items outstanding between the parties are finally settled. See 2 *American Law of Property* (1952), § 6.17, *pp.* 74–75. The general principle on which such contribution is enforced between co-tenants is that the protection of the interest of a co-tenant from extinction by a tax or foreclosure sale, or from impairment by failure to pay necessary repairs and carrying charges,

imposes on each the duty to contribute the money required to make such payments, to the extent of his proportionate share. The applicable maxim is, "Equality is equity." Each co-tenant "stands in the same situation in his relation to the property, and reason and justice as administered by equity require that each one contribute his proportionate share to the common burden. There is, of course, no express contract between them in the usual case, and therefore no affirmative contractual liability at law; but the equitable doctrine has been adopted by courts of law, in these as in other cases of implied *assumpsit* or *quasi*-contract, by implying a purely fictional promise to make such contribution in all cases where equity applies and enforces the doctrine of contribution." *Ibid., p.* 74.

It has been said that ordinarily no affirmative action requiring contribution for taxes, mortgage interest and other carrying charges, or for the recovery of a proportionate share of the cost of necessary repairs, can be maintained by one co-tenant against the others, in the absence of a contract express or implied, except in an accounting between co-tenants for rents and profits derived from the common property or in the final adjustment of all accounts between them on partition. *Ibid., pp.* 76–78. Among our cases allowing contribution we note some which readily fall within such latter classification: *Ross v. Ross,* above, 35 *N. J. Super.* 242 *(Ch. Div.* 1955); *Woolston v. Pullen,* above, 88 *N. J. Eq.* 35 *(Ch.* 1917); *Davidson v. Thompson,* 22 *N. J. Eq.* 83 *(Ch.* 1871), all partition cases, the latter also involving an accounting of rents; and *Hall v. Hall,* 11 *N. J. Super.* 97 *(App. Div.* 1951); *Pieretti v. Seigling,* 134 *N. J. Eq.* 105 *(Ch.* 1943); *Zanzonico v. Zanzonico,* above, 124 *N. J. Eq.* 477 *(Ch.* 1938); *Nobile v. Bartletta,* above, 109 *N. J. Eq.* 119 *(E. & A.* 1931), wherein an accounting was sought.

There is available for distribution here a fund in court arising from damage to the property owned by the parties. On equitable principles this money should be considered to be as available for the enforcement of contribution

as would rents and profits collected by a co-tenant who paid more than his share of the taxes, insurance, carrying charges, etc. The wife should not be permitted to take the cash and let the credit go. In making the payments he did, the husband was protecting her property interest as much as his own.

Expenditures made by a husband on property held by the entirety are presumed to be gifts. *Zanzonico v. Zanzonico,* above, 124 *N. J. Eq.,* at *page* 479 (*Ch.* 1938); *Nobile v. Bartletta,* above, 109 *N. J. Eq.,* at *page* 122 (*E. & A.* 1931). However, the presumption may be rebutted by proof that they were made with the intention, understanding or agreement that they should not be considered gifts, and such proof must be certain, reliable and convincing. *Hall v. Hall,* 11 *N. J. Super.* 97, 100 (*App. Div.* 1951). We hold that the presumption of gift has been rebutted in this case. Not only did the wife leave the husband without his acquiescence (the record in the divorce case shows that he tried to get her to return shortly after she departed the marital home), but she instituted her action for divorce for extreme cruelty, *N. J. S.* 2A:34-2, soon after. She was unsuccessful, and she has never returned to the marital home. *Cf. Ross v. Ross,* above, 35 *N. J. Super.* 242, 248 (*Ch. Div.* 1955). As in that case, so here: "Love and affection, marital concord—all the elements that might in other circumstances support a presumption of gift—are completely absent."

We find nothing to indicate that in paying for the taxes, insurance and maintenance charges, plaintiff acted in other than good faith and from necessity. However, it will be necessary to remand the matter to the trial court to determine (1) what part of the 1953 taxes, if any, was paid before defendant quit the home, and whether the insurance premium on the house was paid before or after she left, since any payment before her departure must be presumed to have been a gift; and (2) the necessity for the repairs made after her leaving and the reasonableness of the charges incurred therefor. Monies expended by plaintiff in 1956

for estimates of damage to the South Bound Brook property should not be allowed.

In the trial court defendant wife vigorously opposed the use of any part of her share of the judgment monies to restore the damaged property. Plaintiff cites no precedent for allowing him to expend the fund in court for repairs and renovation he considers necessary. Indeed, no sound reason appears for the trial court to have lent the compulsion of its order to such an end. To do so might very well, under certain circumstances, put one tenant by the entirety at the mercy of the other tenant's whim or mistaken judgment. It follows that the court was entirely correct in rejecting the contractor's estimate offered in evidence by plaintiff which, aside from being incompetent as hearsay, was (more basically) irrelevant in the light of what we have just said.

Reversed and remanded for action in accordance with this opinion, and the subsequent entry of judgment for contribution out of the wife's half-share of the monies in court for taxes, insurance, carrying charges and reasonable repairs necessarily made after defendant left plaintiff on June 16, 1953.