## LINGO *v.* LINGO

[No. 112, September Term, 1972.]

*Decided January 17, 1973.*

The cause was argued before MURPHY, C. J., and MCWILLIAMS, SINGLEY, SMITH and LEVINE, JJ.

*Joseph A. Mattingly* for appellant.

*Frank W. Wilson,* with whom were *FitzGerald, Ridgway & Wilson* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This controversy stems from the sale of real property which formerly belonged to the parties as tenants by the entireties. Because of their inability to agree upon the amount each should receive from that sale, a bill in equity was filed in the Circuit Court for Montgomery County. Appellant (defendant below) attacks the chancellor's order which adopted a report of the court auditor, acting as a special master, wherein he recommended a distribution favorable to appellee (plaintiff below).

Prior to their divorce, which occurred in 1965, the parties sold a new home that had been built on one of five lots acquired shortly before their separation in 1963. Title to the subject property, in accordance with their established custom, was held by them as tenants by the entireties at the time of its sale on December 2, 1964.

During 1963, while the subject property was being readied for construction, appellee brought to appellant a set of loan papers which required execution for financing to be obtained. When she refused to sign, appellee forged her signature and the loan was successfully processed. He states that he informed her of his action at approximately the same time as the loan was recorded. After work on the house commenced and it had been

partially completed, the lending institution, learning of the forgery when appellant "blew the whistle" on appellee, gave him three hours in which to pay off the loan balance which was then $36,334.95. Appellee managed to accomplish this by selling some individually-owned stock. The effect of his prepayment of the loan, quite naturally, was to increase the equity available for distribution when the property was sold. It is the dispute over those proceeds which forms the basis 'for this appeal.

Appellant claims that she is entitled to half the proceeds on the basis that since the property was owned by the entireties, the loan payment was a gift by appellee. Appellee contends that first he is entitled to reimbursement for the advancement made by him which, in view of their estrangement during virtually the entire period material to this transaction, was hardly intended to represent a gift, and was instead a desperate measure taken to prevent the property from "going down the drain."

In his report, which was adopted by the chancellor and is the basis for this appeal, the auditor recommended that the proceeds remaining *after* reimbursement to appellee, for the payment made by him, be equally divided. In so doing, he rejected the gift theory espoused by appellant in favor of a determination that the parties had conducted their custom-home building operation as a joint venture and, since a co-venturer is entitled to repayment of expenses advanced on behalf of the joint undertaking, appellee is due reimbursement for the advancement made by him. The auditor also concluded that the gift presumption, being rebuttable, was overcome in this case by appellee.

The question presented by this appeal is somewhat narrower in scope than that posited by appellant. What is involved is not simply whether one tenant by the entireties may recover proportionate reimbursement from the other for a loan curtailment made by the former. To this must be added the additional facts that, as found by the auditor, the parties were actually joint venturers

in the building operation leading to the improvement of the subject property, and that the parties were separated when the advancement was made by appellee.

Appellant places heavy reliance on *McCally v. McCally,* 250 Md. 541, 243 A. 2d 538 (1968); *Anderson v. Anderson,* 215 Md. 483, 138 A. 2d 880 (1958); *Gunter v. Gunter,* 187 Md. 228, 49 A. 2d 454 (1946) and *Reed v. Reed,* 109 Md. 690, 72 A. 414 (1909). In *Reed,* property was owned as tenants by the entireties, although it had been acquired with the wife's separate funds. After a divorce, she sought to have it declared as her sole property. Our predecessors said:

> "[W]here a wife during coverture voluntarily and without any fraud or undue influence on the part of the husband, conveys her property to him, the effect of a decree for divorce is not to vest in her an equitable title to such property. It has been repeatedly held by this Court that if a wife gives to her husband property belonging to her separate estate, or permits him to apply it to his own use, or he does so with her knowledge and consent, in the absence of proof that it was given to him to be held in trust for her use, or of a promise by the husband at the time to repay it, it will be presumed that it was intended as an absolute gift to him, and she has no claim therefor against him or his estate." 109 Md. at 692-93.

In *Anderson,* where the determinative facts were not unlike those in *Reed,* this Court followed the latter authority when it said that "[t]he controlling fact in the instant case is that the whole property was acquired as tenants by the entireties. In legal effect, and in the absence of proof that it was not her voluntary act, this transaction on its face amounted to an absolute gift." 215 Md. at 488-89.

In *Gunter v. Gunter, supra,* which was a partition suit following a divorce, our predecessors said, "[i]n the ab-

sence of fraud or undue influence the Courts will not inquire into the contributions of the parties *prior to the joint acquisition,* or attempt an apportionment." 187 Md. at 231 (emphasis added). In *McCally v. McCally, supra,* also a partition suit following divorce, we quoted from *Gunter* with approval.

Those authorities are distinguishable, and are therefore inapposite, because none of them involved payment of an encumbrance by one of the tenants. The rule enunciated in *Gunter,* which we quoted in *McCally,* is inapplicable for the additional reason that we are not concerned here with a contribution made "prior to the joint acquisition," but, on the contrary, with one made after acquisition to avoid its loss by foreclosure.

The conclusion we reach here is not without controlling precedent in prior decisions of this Court. The most recent is *Colburn v. Colburn,* 265 Md. 468, 474-76, 290 A. 2d 480 (1972), where we cited with approval *Pino v. Clay,* 251 Md. 454, 456-57, 248 A. 2d 101 (1968) ; *Schilbach v. Schilbach,* 171 Md. 405, 408, 189 A. 432 (1937) and *Hogan v. McMahon,* 115 Md. 195, 80 A. 695 (1911). In *Hogan,* a suit had been filed to sell property owned by tenants in common. One sought from the other an accounting for payment of certain expenses including payments on two mortgages. In allowing the relief prayed, the Court applied the rule:

> "[T]hat the appellee is entitled to contribution by the appellant for liens and incumbrances paid by her since they became tenants in common. *17 Am. and Eng. Ency. of Law,* 685; 7 Ibid. 353, and, as shown by the last cited authority, that statement includes mortgages, taxes and ground-rent." 115 Md. at 201.

We followed *Hogan* in *Pino v. Clay, supra,* where we said:

> "The general rule in Maryland is that when one tenant pays a mortgage or other encumbrance

upon the common property, he is entitled to contribution from his co-tenant to the extent to which he has paid their share, and is entitled to an equitable lien for the amount due him." 251 Md. at 456-457.

In *Schilbach,* the executrix and the son of a deceased tenant by the entireties sought to charge the other tenant, the surviving husband, for certain expenses including mortgage interest paid by, and on behalf of, the decedent during her lifetime. Although a demurrer to the equity bill was sustained due to a misjoinder of plaintiffs, this Court affirmed the decision without prejudice to a properly-filed suit for enforcement of the claims. In so holding, our predecessors said:

"A tenancy by the entireties is essentially a joint tenancy, modified by the common law theory that the husband and wife are one person. 1 *Tiffany on Real Property,* 645. Except for the fact that it cannot be defeated, during their lives, without the joint action of both, the same rules of law apply to it as to any other co-tenancy. . . .

". . . In *Hogan v. McMahon* [*supra*], it was held that a cotenant was entitled to contribution for necessary repairs and improvements, which add a permanent value to the estate, made and paid by a cotenant with the assent of the other, and to subrogation to the rights of a mortgagee where one cotenant pays off a mortgage on the common property.

". . . Recourse can only be had against the property for such claims as the wife might make if living, and then for payments made on account of liens, incumbrances, and permanent improvements at her request, the assumption being made on the allegations of the bill that nothing was done with the assent of the defendant. . . ." 171 Md. at 407-09.

Appellant guardedly states that our decision in *Colburn* "controls the present appeal, is distinguishable or is in error." We see it as having been foreshadowed by *Hogan* and *Schilbach*. Concededly, one can read *Schilbach,* at first glance, to mean that the rule followed there was being applied to a tenancy-in-common situation. If, however, its facts are studied carefully, then, as we said in *Colburn,* it becomes "clear that the rule of law applied in *Hogan* is equally applicable to tenants by the entireties." 265 Md. at 475. Although *Colburn* dealt with a dispute over taxes and insurance premiums, our reasoning there in pointing out that the property was "protected from loss by the payment of the taxes and insurance premiums," is equally valid in the case of the loan payment here. We think that the four last-mentioned authorities, taken together, support our conclusion that the gift presumption does not apply to the particular circumstances of this case.

In view of the stress placed by appellant upon the forgery of her signature, a word is in order regarding the equities involved here. Our decision should in no way indicate approval of such conduct. The fraudulent nature of that action, however, should not be allowed to obscure the fact that, had there not been the construction financed by the loan in question, and appellee's liquidation of individually-owned stock to avoid foreclosure, the maximum profit which the parties would have shared from the sale of the unimproved lot would have ranged between $3,000 and $6,000. This compares with the net payment of $5,595.27 which, under our holding, they will each receive as the result of the improvement. *Cf. Smith v. Merritt Sav. & Loan,* 266 Md. 526, 537-40, 295 A. 2d 474 (1972), where we recently held that one spouse, in accepting certain benefits, had ratified the forgery of his signature to a mortgage by the other spouse. Here, appellant obviously knew of the ongoing construction, since it was she who informed the lending institution of the forgery.

For these reasons, the chancellor, in ratifying the auditor's report, correctly ruled that appellee was entitled to reimbursement of the construction loan from the sale proceeds, and that the net sum then remaining should be equally divided between the parties.

*Order affirmed; appellant to pay costs.*