## LORRAINE KLAVANS *v.* LEE KLAVANS

[No. 66, September Term, 1974.]

*Decided October 18, 1974.*

The cause was argued before THOMPSON, GILBERT and MENCHINE, JJ.

*Karl H. Goodman* and *Lee Gordon,* with whom were *Gordon & Goodman, P. A.* on the brief, for appellant.

*Lawrence S. Greenwald,* with whom were *Donald N. Rothman* and *Gordon, Feinblatt, Rothman, Hoffberger & Hollander* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

In 1966, Lee Klavans and Lorraine Klavans, his wife, were residents of Baltimore City. In order that their children might attend what they considered to be better schools, they decide to acquire a home in Baltimore County. After looking at several existing houses they decided to purchase a lot and to construct a house thereon. The deed for one lot was acquired on March 6, 1967 and for an adjoining lot on September 22, 1967, both being titled to the parties as tenants by the entireties. The first lot cost $10,500 which was paid out of their savings. The second lot cost $10,000 and was purchased with funds borrowed from Mercury Cab Company, Inc. This note was signed by both Mr. & Mrs. Klavans. Eventually the parties entered into a contract in the amount of $69,000 for the construction of a home on the two lots. Extras brought the total cost of the dwelling to $89,800. Of that amount, $50,000 was obtained by a mortgage executed by both parties; $10,000 was borrowed from Mr. Klavans' stepfather, secured by a note dated May 9, 1969 executed by both parties. As to the balance, $14,800 was derived from savings from Mr. Klavans' earnings and $15,000 from the proceeds of a loan from The Yellow Cab Company. The loan was evidenced by a note executed by Mr. Klavans alone and dated July 1, 1968.

The parties were married in 1950 and continued living together until sixteen months after they moved into their home in 1969. It appears that Mrs. Klavans did not work at any time after her marriage and had no funds of her own. Mr. Klavans, an attorney, was involved in the taxicab business and the parties lived exclusively on his earnings. They were divorced in January of 1972. While the divorce proceedings were pending their house was sold and approximately $19,000 was placed in escrow to await the outcome of the current litigation.

In this litigation, plaintiff, Mr. Klavans, seeks to recover one-half of $29,800 which is the amount he contributed over and above the funds jointly obtained by him and his wife to finance the construction of their home. In the alternative, he

seeks to recover one-half of the principal and interest of the note to The Yellow Cab Company said to total $19,537 as of August 31, 1973.

The trial judge, sitting in the Circuit Court for Baltimore County, found that the $14,800 contributed by the plaintiff from his own funds constituted a gift to the wife, to the extent of her interest in the realty, but that the proceeds of the $15,000 loan from The Yellow Cab Company did not constitute a gift. The trial judge apparently based his decision primarily upon a statement made by Mrs. Klavans that, if she had been requested to, she "guessed" she would have signed the note. The trial judge held that to allow Mrs. Klavans the benefit of one-half of the proceeds of The Yellow Cab Company note as a gift would constitute unjust enrichment and held that as to the proceeds of that note there was a constructive trust in favor of the husband. We are unable to see any distinction between the funds advanced by Mr. Klavans from his earnings and those which he borrowed on his own account by a note from The Yellow Cab Company. We, therefore, hold that the proceeds from the loan were a gift and thus the funds held in escrow belong one-half to each party.

Maryland has long held that when one spouse advances funds to purchase property which is placed in the names of both parties as tenants by the entireties there is a presumption that the spouse providing the funds intended to make a gift to the extent of his or her spouse's interest in the property. *McCally v. McCally*, 250 Md. 541, 243 A. 2d 538 (1968); *Anderson v. Anderson*, 215 Md. 483, 138 A. 2d 880 (1958); *Gunter v. Gunter*, 187 Md. 228, 49 A. 2d 454 (1946).

The Court in *Reed v. Reed*, 109 Md. 690, 692, 72 A. 414 (1909), stated the rule more fully, in the context of property titled in a single name, as follows:

"[W]here a wife during coverture voluntarily and without any fraud or undue influence on the part of the husband, conveys her property to him, the effect of a decree for divorce is not to vest in her an equitable title to such property. It has been

repeatedly held by this Court that if a wife gives to her husband property belonging to her separate estate, or permits him to apply it to his own use, or he does so with her knowledge and consent, in the absence of proof that it was given to him to be held in trust for her use, or of a promise by the husband at the time to repay it, it will be presumed that it was intended as an absolute gift to him, and she has no claim therefor against him or his estate."

The husband recognizes the rule as we have stated it but argues that it is not applicable to the facts of the instant case. To support his argument he seizes upon the language of the Court of Appeals in the recent case of *Lingo v. Lingo*, 267 Md. 707, 711, 299 A. 2d 11 (1973), wherein the Court said:

"Those authorities are distinguishable, and are therefore inapposite, because none of them involved payment of an encumbrance by one of the tenants. The rule enunciated in *Gunter*, [supra], which we quoted in *McCally*, [supra], is inapplicable for the additional reason that we are not concerned here with a contribution made 'prior to the joint acquisition,' but, on the contrary, with one made after acquisition to avoid its loss by foreclosure."

He argues that in providing money for the contractor from The Yellow Cab Company loan he was preventing the contractor from obtaining a mechanic's lien and that since the lots had been previously acquired, his loan was made after acquisition and to avoid loss by foreclosure of the presumed liens. Whatever validity his argument might have is undercut by a consideration of the facts of *Lingo v. Lingo*, *supra*, and the language used by the Court in other parts of that opinion. The facts there show that Mr. & Mrs. Lingo were engaged in the business of building houses for sale and that prior to their separation a lot had been acquired in their names as tenants by the entireties. After the parties separated and while the house was being readied for construction, Mrs. Lingo refused to execute a mortgage to cover a construction loan whereupon Mr. Lingo forged her

signature thereon. After she discovered his fraud, she notified the bank who gave Mr. Lingo three hours in which to pay off the loan of $36,334.95. He did so by selling some individually owned stock. In other parts of the opinion the Court said:

> "The question presented by this appeal is somewhat narrower in scope than that posited by appellant. What is involved is not simply whether one tenant by the entireties may recover proportionate reimbursement from the other for a loan curtailment made by the former. To this must be added the additional facts that, as found by the auditor, the parties were actually joint venturers in the building operation leading to the improvement of the subject property, and that *the parties were separated when the advancement was made by appellee." Id.* at 709-10. (Emphasis added).

> "We think that the four last-mentioned authorities, taken together, support our conclusion that the gift presumption does not apply to the *particular circumstances* of this case." *Id.* at 713. (Emphasis added).

Our position is supported by an analysis of the cases relied on by the Court to support this statement. Only two of the cases involved a husband and wife: *Colburn v. Colburn,* 265 Md. 468, 290 A. 2d 480 (1972) and *Schilbach v. Schilbach,* 171 Md. 405, 189 A. 432 (1937). In those cases the Court was concerned with the making of improvements, the payment of taxes or the liquidation of loans *after* the parties had been divorced or separated. The Court was not dealing with a situation where, as in the instant case, the parties were living together as man and wife at the time the payments were made. The other cases cited in *Lingo* concerned persons who were not husband and wife.

Mrs. Klavans relies on *Meyers v. East End Loan and Savings Association,* 139 Md. 607, 116 A. 453 (1922) wherein the Court specifically held that a payment made prior to a divorce on account of property owned as tenants by the

entireties was presumed to be a gift by one spouse to another. Mr. Klavans attempts to distinguish the instant case from *Meyers* on the basis that in *Meyers* the payments were made under a contract to purchase an estate by the entireties. We do not think the distinction is sound. In *Cunningham v. Cunningham*, 158 Md. 372, 378, 148 A. 444 (1930), the Court of Appeals cited *Meyers v. East End Loan and Savings Association, supra,* to support this statement:

> "The payments [on mortgages on property previously acquired as tenants by the entireties and occupied as a home] made by the husband are to be regarded as gifts to his wife to the extent to which they relieved her of an equality of contribution (*Meyers v. East End Loan & Savings Assn.*, 139 Md. 607; * * *."

The rule we are applying seems to be followed throughout the United States. Although there are many cases applying the rule where funds of one spouse are used to purchase property as tenants by the entireties, there are relatively few which involve the payment of liens on property already titled in both names. All cases we have found hold, or state in dictum, that a payment by one spouse on liens on property owned as tenants by the entireties is presumed to be a gift to the other spouse, to the extent of his interest.[1] We have found no case to the contrary.

Inasmuch as there was insufficient evidence to rebut the gift presumption, we hold the trial judge was clearly erroneous in holding the proceeds of the note from The Yellow Cab Company did not become a gift to the wife, to the extent of her interest, when the proceeds were paid to the contractor who had erected a house on lots owned by the

---

1. *College Point Savings Bank v. Tomlinson,* 42 Misc. 2d 1061, 249 N.Y.S.2d 938 (Sup. Ct. 1964); *Dorf v. Tuscarora Pipe Line Company,* 48 N.J.Super. 26, 136 A. 2d 778 (1957); *Martos v. Martos,* 134 N.Y.S.2d 832 (1954); *Everly v. Schoemer,* 139 W. Va. 392, 80 S.E.2d 334 (Sup. Ct. 1954); *Commerce Union Bank v. Weis,* 27 Tenn. App. 433, 181 S.W.2d 764 (1944); *Hogevoll v. Hogevoll,* 59 Cal.App.2d 188, 138 P. 2d 693 (1943); *Radabaugh v. Radabaugh,* 109 Ind. App. 350, 35 N.E.2d 114 (1941) and *Zanzonico v. Zanzonico,* 124 N.J.Eq. 477, 2 A. 2d 597 (1938).

150

parties as tenants by the entireties, the payments being made while the parties were living together.

*Judgment reversed.*
*Case remanded for entry of a judgment for appellant.*
*Appellee to pay the costs.*