## KLAVANS *v.* KLAVANS

[No. 235, September Term, 1974.]

*Decided July 3, 1975.*

The cause was argued before MURPHY, C. J., and

SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Lawrence S. Greenwald,* with whom were *Donald N. Rothman* and *Gordon, Feinblatt, Rothman, Hoffberger & Hollander* on the brief, for appellant.

*Karl H. Goodman* and *Lee Gordon,* with whom were *Gordon & Goodman, P.A.* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This case commenced in the Circuit Court for Baltimore County, where appellant, Lee Klavans (the husband), sought to impress a lien and impose a constructive trust upon certain funds concerning which he and appellee, Lorraine Klavans (the wife), had become engaged in a dispute.[1] The chancellor (Cicone, J.) granted the relief, but his decision was overturned on appeal by the Court of Special Appeals in *Klavans v. Klavans,* 23 Md. App. 144, 326 A. 2d 26 (1974). We granted certiorari to consider important questions pertaining to the presumption of gift doctrine as applied to the husband-wife relationship.

The facts giving rise to this dispute are so thoroughly summarized in the opinion written by Judge Thompson for the Court of Special Appeals that, for the most part, we need merely quote them here.

> "In 1966, Lee Klavans and Lorraine Klavans, his wife, were residents of Baltimore City. In order that their [three] children might attend what they considered to be better schools, they decided to acquire a home in Baltimore County. After looking at several existing houses they decided to purchase [the necessary land] and to construct a house thereon. The deed for one .lot was acquired on March 6, 1967 and for an adjoining lot on

---

1. The case was initially brought as an action at law, but pursuant to Maryland Rule 515 was transferred to the equity side where new pleadings were filed.

September 22, 1967, both being titled to the parties as tenants by the entireties. The first lot cost $10,500 which was paid out of their savings. The second lot cost $10,000 and was purchased with funds borrowed from Mercury Cab Company, Inc. This note was signed by both Mr. and Mrs. Klavans. Eventually the parties entered into a contract in the amount of $69,000 for the construction of a home on the two lots. Extras brought the total cost of the dwelling to $89,800. Of that amount, $50,000 was obtained by a mortgage executed by both parties; $10,000 was borrowed from Mr. Klavans' stepfather, secured by a note dated May 9, 1969 executed by both parties. As to the balance, $14,800 was derived from savings from Mr. Klavans' earnings and $15,000 from the proceeds of a loan from The Yellow Cab Company [(the Yellow Cab note)]. The loan was evidenced by a note executed by Mr. Klavans alone and dated July 1, 1968.

"The parties were married in 1950 and continued living together until sixteen months after they moved into their home in 1969. It appears that Mrs. Klavans did not work at any time after her marriage and had no funds of her own. Mr. Klavans, an attorney, was involved in the taxicab business and the parties lived exclusively on his earnings. They were divorced in January of 1972. While the divorce proceedings were pending their house was sold and approximately $19,000 was placed in escrow to await the outcome of the current litigation.

"In this litigation, . . . Mr. Klavans [sought] to recover one-half of $29,800 which is the amount he contributed over and above the funds jointly obtained by him and his wife to finance the construction of their home. In the alternative, he [sought] to recover one-half of the principal and interest of the note to The Yellow Cab Company said to total $19,537 as of August 31, 1973.

"The trial judge, sitting in the Circuit Court for Baltimore County, found that the $14,800 contributed by the plaintiff from his own funds constituted a gift to the wife, to the extent of her interest in the realty, but that the proceeds of the $15,000 loan from The Yellow Cab Company did not constitute a gift. The trial judge apparently based his decision primarily upon a statement made by Mrs. Klavans that, if she had been requested to, she 'guessed' she would have signed the note. The trial judge held that to allow Mrs. Klavans the benefit of one-half of the proceeds of The Yellow Cab Company note as a gift would constitute unjust enrichment and held that as to the proceeds of that note there was a constructive trust in favor of the husband. . . ." 23 Md. App. at 145-46.

Since no cross-appeal was taken by the husband from the chancellor's determination respecting the $14,800 contribution, we are concerned here only with the $15,000 derived from the Yellow Cab loan. In reversing the circuit court decision on the latter, the Court of Special Appeals concluded that there was insufficient evidence to rebut the presumption of a gift which arose — to the extent of the wife's interest — when the husband paid the proceeds of the Yellow Cab note to the contractor. Thus, the court held, the decision of the chancellor was clearly erroneous, and the "funds held in escrow belong one-half to each party." 23 Md. App. at 146. We agree.

In urging reversal, the husband advances these contentions, although not in this order:

(i) The Court of Special Appeals erred in holding "clearly erroneous for insufficiency of evidence" the chancellor's ruling that the gift presumption had been rebutted.

(ii) The Court of Special Appeals erred in reversing the chancellor's finding of a constructive trust to avoid unjust enrichment to the wife at the husband's expense.

(iii) The Court of Special Appeals erred in refusing to hold that the loan and construction advances were made by the husband as the agent of the wife.

(iv) The Court of Special Appeals erred in rejecting recovery by the husband on the theory that he had made a contribution toward the payment of an encumbrance.

In the view we take of this case, our holding that the gift presumption applies is dispositive of the other issues, which, therefore, we need not reach. In short, our conclusion that there was a gift is mutually exclusive of those theories. Since a gift was made, the husband was not acting as the agent of the wife, no contribution was made, and there was no unjust enrichment of the wife justifying the imposition of a constructive trust.

With regard to the gift presumption, the Court of Special Appeals said below: "Maryland has long held that when one spouse advances funds to purchase property which is placed in the names of both parties as tenants by the entireties there is a presumption that the spouse providing the funds intended to make a gift to the extent of his or her spouse's interest in the property." 23 Md. App. at 146. *Accord, McCally v. McCally,* 250 Md. 541, 545, 243 A. 2d 538 (1968); *Anderson v. Anderson,* 215 Md. 483, 488-89, 138 A. 2d 880 (1958); *Reed v. Reed,* 109 Md. 690, 692-93, 72 A. 414 (1909). This gift presumption, although characterized in a number of our earlier cases as being absolute, is, of course, rebuttable. *See Lingo v. Lingo,* 267 Md. 707, 713, 299 A. 2d 11 (1973); *Anderson v. Anderson, supra,* 215 Md. at 489; *cf. Ensor v. Ensor,* 270 Md. 549, 557, 312 A. 2d 286 (1973).

Although acknowledging that this is the rule applicable to "a contribution on account of the purchase price of an estate by the entireties," the husband argues that here the contribution was made "on account of construction and improvements upon a previously existing estate by the entireties." He relies upon *Lingo* for this argument. There, the parties — while yet married — had been engaged as

joint venturers in the business of building houses for sale. Prior to their separation and divorce, they acquired ownership of a lot as tenants by the entireties, which was subsequently readied for construction following their separation. After the wife refused to join in a construction loan, the husband forged her signature to the necessary papers. On learning of this action, she notified the lending institution, which gave her husband three hours to pay off the loan of approximately $36,000. He accomplished this by selling some individually owned stock. The property was then sold, but the parties were unable to agree upon the amount each should receive. The wife claimed that she was entitled to one-half the proceeds on the basis that since the property was owned by the entireties, the loan payment was a gift to the extent of her interest therein.

The husband, however, maintained that before an equal division of the available proceeds should be made, he was entitled to reimbursement for the advancement. The essence of his argument was that considering "their estrangement during virtually the entire period material to [the] transaction, [the advancement] was hardly intended to represent a gift, and was instead a desperate measure taken to prevent the property from *'going down the drain.'* " 267 Md. at 709. (emphasis added). Upon the narrow facts of that case, we upheld the circuit court ruling that the gift presumption had been rebutted by the husband. Hence, he was entitled to reimbursement.

In addition to relying upon *Lingo* for the distinction between a contribution on account of the purchase price paid to acquire the property and one made subsequently for construction and improvements, the husband attempts to draw two further parallels between *Lingo* and this case. First, since payment of the Yellow Cab note proceeds to the contractor theoretically avoided potential mechanic's liens, he argues that here the advancement was also in payment of an "encumbrance." Secondly, he points to his testimony before the chancellor that at the time he made the advancement, he and his wife were having "marital difficulties." He bolsters this with his testimony that his

"intent was to provide a house for the children . . . and to better their living conditions. It wasn't ever intended as a gift to Mrs. Klavans." Finally, in language strangely reminiscent of the statement which we quoted previously from *Lingo*, he declared that but for the loan, "everything would have gone down the drain."

None of these claims is sound. The distinction between contributions for the purchase of property acquired as tenants by the entireties and those made subsequently on account of construction, improvements or payment of liens is supported neither by authority nor by logic. The husband's reliance on *Cunningham v. Cunningham*, 158 Md. 372, 148 A. 444, 67 A.L.R. 1176 (1930), for this contention is patently misplaced. The issue there was simply whether a widow who had owned real property with her recently deceased husband as tenants by the entireties could require the administrator of his estate to pay the mortgages thereon. Indeed, the Court, citing with approval *Meyers v. Loan & Sav. Assn.*, 139 Md. 607, 614, 116 A. 453 (1922), stated in *dicta*:

> ". . . The payments [(on mortgages of property previously acquired as tenants by the entireties and occupied as a home)] made by the husband [prior to the decree of divorce] are to be regarded as gifts to his wife to the extent to which they relieved her of an equality of contribution . . . ." 158 Md. at 378.

Referring to the payment of liens in this context, the Court of Special Appeals noted that "[a]lthough there are many cases [throughout the United States] applying the [gift presumption] rule where funds of one spouse are used to purchase property as tenants by the entireties, there are relatively few which involve the payment of liens on property already titled in both names." 23 Md. App. at 149. Nevertheless, the weight of authority holds that a payment of liens by one spouse on property owned as tenants by the entireties is presumed to be a gift to the other to the extent of the latter's interest. *Radabaugh v. Radabaugh*, 109 Ind. App. 350, 35 N.E.2d 114, 115 (1941); *Dorf v. Tuscarora Pipe*

*Line Co., Ltd.,* 48 N.J.Super. 26, 136 A. 2d 778, 783 (1957); *Everly v. Schoemer,* 139 W. Va. 392, 80 S.E.2d 334, 337-38 (1954); *see College Point Savings Bank v. Tomlinson,* 42 Misc. 2d 1061, 249 N.Y.S.2d 938 (Sup. Ct. 1964); *Martos v. Martos,* 134 N.Y.S.2d 832, 835-36 (1954). We are aware of no Maryland case to the contrary. Nothing we said in *Lingo,* moreover, establishes a different rule with respect to payments made by the husband for construction and improvements as distinguished from payments on encumbrances or liens. *See generally Cunningham v. Cunningham, Meyers v. Loan & Sav. Assn.,* both *supra.*

To the extent that the Yellow Cab loan is claimed by the husband to have been an encumbrance on the property, and thus not a completed gift, the contention is answered by the fact that this was an individual loan made by the husband, not one secured by the property. The proceeds could have been used by him — with impunity — for any purpose. In short, the Yellow Cab loan was not an encumbrance on the property.

Neither is there any merit in the remaining arguments — mentioned earlier — advanced by the husband to support his contention that there was no gift here. For these, he pins his hopes exclusively on *Lingo.* Contrary to the claim advanced by the husband, as we have already suggested, this case is not a carbon copy of *Lingo.* First, we were confronted there not with the construction of a dwelling for a complete family unit, but with a house erected for sale in connection with the building business operated by the parties as a joint venture. Secondly, despite the husband's subjective characterization of the family's domestic problems, the admitted fact is that he proceeded to live in the home for at least 16 months after it was completed, during which the parties occupied the same bedroom. This is in sharp contrast to *Lingo,* where the parties had lived separate and apart for an extended period prior to the advancement.

Moreover, in *Lingo* the husband was left without any viable alternative except financial disaster, and had but three hours in which to act. There, the wife not only refused

to cooperate, but actually engaged in conduct which was contrary to her own interests. Here, no such dilemma confronted the husband. He willingly signed the Yellow Cab note alone, making no request of his wife to do so, and deposited the proceeds of $15,000 in his own account from which he thereafter made withdrawals for the construction of the house.

We sought to emphasize in *Lingo* that our holding there was narrowly circumscribed by the peculiar facts of that case. In no way was it intended by us as a retreat from the general rule that advancements and payments by one spouse toward the purchase — or, as here, the improvement — of property owned as tenants by the entireties are presumed to be a gift to the other spouse to the extent of the latter's interest in the property. This principle is controlling here.

There remains for our determination in this regard the question whether the finding of the chancellor that the gift presumption had been rebutted was clearly erroneous. Pivotal to this decision is the standard of proof necessary to rebut the presumption. The wife urges that proof by the mere "preponderance of the evidence" is not sufficient, and that the proper standard should be "clear and convincing evidence."

Although we have not squarely decided this narrow question, there are intimations in our prior decisions that the "clear and convincing evidence" test should apply. As we said in *Porter v. Porter*, 168 Md. 287, 294-95, 177 A. 460 (1935):

> "Unless there are special and controlling circumstances to the contrary, a conveyance made to the purchaser's wife raises a stronger presumption of a gift or advancement [than] one made to any other person, even . . . to one's own child. (citation omitted) This presumption, the strongest in such cases, in effect means that *clearer and more conclusive evidence* is required to convert a fee simple title to a wife into a resulting trust in

favor of her husband than in any other such cases."
(emphasis added).

*Accord, Ensor v. Ensor, supra,* 270 Md. at 562; *Mountford v. Mountford,* 181 Md. 212, 218-19, 29 A. 2d 258 (1942). The weight of authority elsewhere appears to support the rule that the gift presumption must be overcome by clear and convincing evidence. 41 Am.Jur.2d *Husband and Wife,* § 90 (1968). We hold that it applies here.

Essentially, the husband relies upon his self-serving denial of an intention to make a gift for his contention that the presumption here was rebutted; and upon the conjecture, to which we alluded earlier in our summary of the facts, concerning whether, had the wife been required to do so, she would have signed the Yellow Cab note. As we have observed, the chancellor rested his decision exclusively upon the latter. Apart from the highly speculative nature of this testimony, it is of questionable relevance. Such a hypothetical statement, even if made, would not be sufficient to rebut an intention on the husband's part to make a gift of one-half the proceeds.

It is the teaching of *Lingo,* and the prior decisions upon which we there relied for our holding, that the question of whether a purported gift by one spouse to another is made with donative intent turns on the facts and circumstances prevailing at that particular time. In this context, hindsight and afterthought are of doubtful significance. Any other rule would raise havoc in respect to the status of real estate titles whenever such a gift had been made. *See Ensor v. Ensor, supra,* 270 Md. at 563; *McCally v. McCally, supra,* 250 Md. at 548.

The evidence offered by the husband is simply insufficient to rebut by clear and convincing evidence the presumption that payment to the contractor of the $15,000 obtained from the Yellow Cab note was — to the extent of her interest in the property — a gift to the wife. Accordingly, the finding of the chancellor was clearly erroneous. As Judge Thompson cogently observed for the Court of Special Appeals: "We are unable to see any distinction between the funds advanced by

Mr. Klavans from his earnings and those which he borrowed on his own account by a note from The Yellow Cab Company." 23 Md. App. at 146.

*Judgment affirmed; appellant to
pay costs.*